[Civ. No. 1064. Fourth Appellate District.—August 16, 1934.]

GRACE McMILLAN et al., Respondents, v. J. R. THOMP-
SON et al., Defendants; ALPHA C. ZIMMER et al.,
Appellants.

Harry W. Horton and Hindman & Davis for Appellants.

Hickcox & Trude for Respondents.

BARNARD, P. J.—Shortly after 6 o'clock on the evening of September 17, 1931, the defendant Cagle, driving a loaded truck and trailer belonging to the defendant Zimmer, was proceeding south on a paved highway near the city of Brawley. While passing what is known as Carter's Service Station at a speed of some fifteen or twenty miles an hour, the engine on the truck commenced to sputter or slow down. Cagle pulled the choke out and the motor started to pick up again. When he had proceeded about 450 feet from the service station the engine suddenly stopped and the truck and trailer came to a stop on the extreme right-hand side of the paved portion of the highway. The highway consisted of a concrete roadway twenty feet wide with dirt shoulders on either side which were from seven to ten feet wide, and the road was straight for a considerable distance on either side of the point where the vehicle stopped. When the truck stopped, Cagle went to the rear of the trailer and saw that his tail-lights and five courtesy lights were burning and then proceeded to make an investigation as to the cause of the trouble. He found the gas pump out of order and, seeing no car coming along which was large enough to pull the load farther off the road, proceeded to make the necessary repair.

Shortly thereafter, a light Ford truck driven by one Hubert L. McMillan, and in which his brother John McMillan was a passenger, which was also traveling south, approached the truck and trailer from the rear. The driver of this car observed the tail-light on the stalled truck and trailer when he was about 450 feet away, and at that point could see the truck itself and that it was "completely stopped". When he was about 150 feet away he could see the entire body of the truck and trailer, and "how much

room I needed to clear it''. The left half of the highway was entirely clear, with no car approaching from the south, and the driver of the Ford truck turned to the left and started to pass the stalled truck and trailer. As the front of this car reached a point about opposite the rear of the trailer, another car, driven by the defendant Deaver, which was also proceeding south, crashed into the rear end of the Ford truck, as a result of which the Ford truck crashed into the stalled truck and trailer, causing injuries to John McMillan which resulted in his death.

This action for damages was brought by the widow and minor child of the deceased, the complaint alleging concurrent negligence on the part of all of the defendants. A motion by the defendants Zimmer and Cagle for an instructed verdict was denied, after which a verdict for $4,000 was returned against those defendants and one for $500 against the defendant Deaver. From a subsequent order denying their motion for judgment notwithstanding the verdict, the defendants Zimmer and Cagle have appealed. A new trial was granted on motion of the plaintiffs, although this is not involved on this appeal.

The first point raised is that it appears from the evidence that if the appellant Cagle was guilty of any negligence in stopping the truck and trailer on the paved portion of the road, such negligence was not a proximate cause of the injuries to the deceased. It is the appellants' contention that the accident in question was proximately caused by the intervening act of a third person, Deaver, while the respondents contend that the stopping of the truck and trailer upon the paved portion of the highway was a proximate cause of the accident in spite of any independent act of this third person, since the driver of the truck and trailer must be held to have known, in the ordinary and natural course of events, that the intervening act was likely to happen.

The general rules applicable to such a situation were outlined in *Newman* v. *Steuernagel*, 132 Cal. App. 417 [22 Pac. (2d) 780], as follows:

''It is the general rule that an original act of negligence is not a proximate cause of an injury when the same directly results from an intervening act of another party which was one not to be reasonably anticipated by the first party as

reasonably likely to occur and follow through and from his own act. The general rules are thus expressed in 19 Cal. Jur.:

" 'An independent wrongful act, to constitute the proximate cause by displacing the original primary cause, must be so disconnected in time and nature as to make it plain that the damage was in no way a natural or probable consequence of the original wrongful act or omission. If a wrongdoer could have anticipated that an intervening act might, in natural and ordinary sequence follow the original act of negligence, he is not released from liability by reason of the intervening cause.' (Page 570.)

" 'In order to warrant a finding that negligence or an act not amounting to wanton wrong is the proximate cause of an injury, it must not only appear that the injury is the natural and probable consequence of the negligent or wrongful act but that it ought to have been foreseen in the light of attendant circumstances.' (Page 562.)

"In 22 Ruling Case Law, page 134, the rule is thus stated: 'It is universally agreed that the mere fact that the intervention of a responsible human being can be traced between the defendant's wrongful act and the injury complained of will not absolve him. On the contrary the general rule is that whoever does a wrongful act is answerable for all the consequences that may ensue in the ordinary course of events, though such consequences are immediately and directly brought about by an intervening cause, if such intervening cause was set in motion by the original wrongdoer, or was in reality only a condition on or through which the negligent act operated to produce the injurious result. Any number of causes and effects may intervene between the first wrongful cause and the final injurious consequence; and if they are such as might, with reasonable diligence, have been foreseen, the last result, as well as the first, and every intermediate result, is to be considered in law as the proximate result of the first wrongful cause. The question always is, was there any unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? The test is to be found in the probably in-

jurious consequences which were to be anticipated, not in the number of subsequent events and agencies which might arise.'

"In *Hale* v. *Pacific Tel. & Tel. Co.*, 42 Cal. App. 55 [183 Pac. 280, 281], the court said: 'The rule, as we understand it, applicable to such cases, is that where the original negligence of a defendant is followed by an independent act of a third person which results in a direct injury to a plaintiff, the negligence of such defendant may, nevertheless, constitute the proximate cause thereof if, in the ordinary and natural course of events, the defendant should have known the intervening act was likely to happen; but if *the intervening act constituting the immediate cause of the injury* was one which it was not incumbent upon the defendant to have anticipated as reasonably likely to happen, then, since the chain of causation is broken, he owes no duty to the plaintiff to anticipate such further acts, and the original negligence cannot be said to be the proximate cause of the final injury.' (Italics ours.)

"In *Reynosa* v. *Pickwick Stages System*, 115 Cal. App. 383 [1 Pac. (2d) 548, 549], it is said: 'An intervening efficient cause is a new and independent force which breaks the causal connection between the original wrong and the injury, and but for which the injury would not have occurred. The law will not look back from the injurious consequences beyond the last efficient cause, where a responsible and intelligent person has intervened, if the chain of events is so broken that they become independent and the result cannot be said to have probably and naturally accrued from the primary cause, or to have been anticipated.'

"In *Katz* v. *Helbing*, 205 Cal. 629 [271 Pac. 1062, 1064, 62 A. L. R. 825], the court said: ' . . . the acts of a defendant are deemed the proximate cause of such consequences as a reasonably prudent man would anticipate as likely to result therefrom. (Citing cases.) Intervening wrongful acts of third persons, but for which injuries complained of would not have been received, ordinarily break the chain of causation, because they are not to be anticipated as probable consequences, but are occasional and exceptional results.' "

If it be assumed that the driver of the truck and trailer was negligent in stopping where he did, we think

it must be held, under the established rules, that this act upon his part was not a proximate cause of the accident here in question. Had the truck and trailer been moving at the time, the appellants would not have been negligent, but the general situation, so far as the negligence of Deaver is concerned, would have been the same. The stalled truck was plainly visible, with its lights burning, and the left half of the highway was entirely clear, as testified to by the driver of the light truck which was about to pass. Under such conditions, while the driver of the stalled truck must have known that other vehicles would be apt to pass, it would be unreasonable to expect him to also anticipate that, while another car was passing, a third car would come up from behind and crash into the passing car. While a sudden stop frequently causes a collision with a car approaching from the rear, it is not ordinarily to be expected that drivers of automobiles will run head-on into cars ahead of them which are in plain sight and have been long stopped. Much less is it to be expected that a driver will cross to the left half of a highway when the way is not clear, and then crash into a car ahead which is not stopped, but is moving in the same direction as himself. That the defendant Deaver should cross over to the left side of the road and then crash into a car directly in front of him is a circumstance hardly to have been expected whether the truck and trailer were stopped or moving. In our opinion, the injury here resulted not only from the intervening act of a third party, but from one which was not reasonably to have been anticipated by the driver of the stalled truck as likely to occur and follow through and as the result of his own act.

We also think the second contention, to the effect that the evidence is not sufficient to show negligence on the part of the appellants, must be sustained. The respondents argue that such negligence appears since the driver of the truck and trailer stopped on the paved highway, in violation of section 136 of the California Vehicle Act, and since he could have driven off the pavement when the engine first missed. The driver of the truck testified that this was the first time he had had any trouble with the engine. He also testified "Right in front of Carter's service station, a little bit this side, I first noticed this trouble. I was

going then about twenty miles an hour and it commenced to sputter or slow down, but not for long; I just pulled the choke out and the motor started to pick up again. . . . When my car stopped there at the scene of the accident it stopped suddenly, just a little ways before it cut out on me right by the service station and I pulled the choke out; I didn't know at the time, but thought maybe the gas line was stopped up through the carbureter and I could pull it out of there with the choke; there could be water in the gasoline or air, or the gas line could be stopped up; there could be a vacuum in the gas line, and when you choke it that puts more gasoline in from the tank, and when I choked the car at Carter's station it went for a way pretty good and then suddenly it just stopped, quit on me all at once and when it stopped until I had made my investigation I didn't know what was the matter with it; . . . '' The only evidence in the record is to the effect that when this engine started to sputter or slow down near the service station, the action taken by the driver caused it to work pretty well until it suddenly stopped. It is not an uncommon experience for a motor to miss or sputter for a moment and then run all right. There is nothing in the evidence to justify an inference that the driver of the truck knew, or should have known, that the engine was about to stop suddenly, and nothing to indicate that a reasonably prudent man would have acted otherwise under the same circumstances. Section 136 of the California Vehicle Act provides an exception to the rule relied on by respondents in the case of disabled vehicles, and the facts of this case bring it within that exception.

The order appealed from is reversed with directions to enter a judgment in favor of these appellants.

Marks, J., and Jennings, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 15, 1934.