684

G. M. HUNTON, Plaintiff and Appellant, v. CALIFORNIA
    PORTLAND CEMENT COMPANY (a Corporation)
    et al., Defendants and Appellants.

686

Nottbusch & Nottbusch and Head, Wellington & Jacobs for Plaintiff and Appellant.

Luce, Forward, Lee & Kunzel for Defendants and Appellants.

WEST, J. pro tem.—There are two appeals involved in this litigation. The plaintiff instituted the action to recover damages for the alleged wrongful death of his son, Merlin Hunton, who was killed when a truck he was driving ran into a cement truck owned by the California Portland Cement Company and operated by Wise. Plaintiff also seeks to recover for damage to his truck occasioned by the same accident.

Upon the completion of testimony defendants moved the court for a directed verdict, which motion was denied. The jury returned a verdict for plaintiff in the amount of $6,500. Thereafter, defendants made a motion for judgment notwithstanding the verdict. This motion was also denied. Defendants moved for a new trial which was granted by the trial court specifically upon the ground of errors of law alone. From the order granting a new trial plaintiff appealed. From the order denying the motion for judgment notwithstanding the verdict defendants appealed.

The facts out of which the litigation arose are as follows: At about the hour of six o'clock a. m. the plaintiff's son, Merlin Hunton, aged seventeen, was driving a Ford V-8 trac-

tor with semi-trailer loaded with ten tons of sugar in a southerly direction on U. S. Highway No. 101, in what is known as Rose Canyon, north of the city of San Diego. At the time of the accident the highway at the point where the collision occurred, and also northerly and southerly of said point, was under construction. The east side of the highway had been excavated preparatory to paving. The west side consisted of three ten-foot strips of concrete suitable for driving purposes. North of the scene of the accident, at intervals, there were a number of signs indicating that the highway was under construction. Westerly of the highway was a shoulder of the width of from six to ten feet. Sometime prior to the accident the shoulder had been scratched or scarified preparatory to oiling.

The defendant Wise was driving a truck loaded with approximately nineteen tons of cement. He stopped on the westerly lane of traffic with the idea of unloading his cement, stepped out of his truck on the left-hand side and after taking a step or two from the truck observed the sugar truck driven by deceased proceeding southerly in the lane where he was parked. He jumped back into his truck and immediately thereafter the sugar truck collided with the rear of his vehicle. According to the testimony of Wise his truck had been standing a matter of seconds, or perhaps one minute, at the time of the impact.

At the point where Wise stopped the highway curves to the right. Several witnesses testified as to the distance the rear of the cement truck could be seen by one approaching from the north in a vehicle. This distance varied from three hundred to six hundred feet. There was no question but that there remained open for traffic at least twenty feet of pavement to the left or east of the defendant's truck.

Wendell Tedrow, who was riding in the sugar truck with the deceased at the time of the accident, testified that he did not see the standing cement truck until the vehicle in which he was riding was about one hundred fifty feet northerly of the point of impact, at which time deceased was driving at about fifteen miles per hour. He further stated that when they had arrived at a point about seventy-five feet to the rear of the cement truck decedent started to turn left to go around it but that the truck did not respond to the turning of the steering wheel and was directly in the rear of the parked truck at the time of the impact, at which time dece-

dent had slowed the sugar truck to a speed of about six miles an hour. There was testimony to the effect that it is common for vehicles of the type of plaintiff's truck to fail to respond to turning while the brakes are applied, the tendency being for such vehicles under such conditions to go directly forward in spite of the effort made to change course.

Immediately after the impact the sugar truck caught fire and plaintiff's son was cremated in the vehicle.

At the trial defendants contended that it was impracticable for their truck to have been driven off the highway onto the shoulder to park in view of the torn or scarified condition of the shoulder, which had been dug to a depth of some three inches in the scratching operation. Defendant Wise said that he had observed the shoulder and that it was wet, loose and torn up.

There was evidence that the pavement was damp due to a heavy mist and also that the shoulder was damp from the same cause, and in addition that some water had been turned on the shoulder shortly before the accident occurred.

There was some difference of opinion as to whether the mist was still heavy or had cleared before the impact. There was no traffic approaching from the south and had decedent's turn to the left been successful he had ample room to clear the standing vehicle and to continue on towards San Diego. However, it should be stated that in view of the fact that the cement truck was parked on a curve there was not a clear view of the two open lanes for any great distance south of the parked cement truck.

Skid marks for approximately one hundred feet were visible on the pavement indicating the course of the plaintiff's truck.

The foregoing statement of facts was practically agreed upon as there was very little conflict with regard to the physical facts surrounding the occurrence.

We will consider first the appeal taken by defendants.

Defendants contend that the evidence without conflict establishes that the proximate cause of the accident was not the negligence of defendants but was the negligence of plaintiff's deceased son in not avoiding the standing truck in front of him; that plaintiffs were guilty of contributory negligence as a matter of law in not avoiding the truck in spite of the fact that there was ample opportunity to do so, and further because at the time of the accident the deceased was

less than eighteen years of age and was operating the sugar truck without a chauffeur's license in violation of the law.

It is the contention of defendants that the negligence of defendants' driver, Wise, was in no way a proximate cause of the accident but that the negligence of decedent in failing to avoid the stopped vehicle constitutes a separate, independent, negligent act and therefore becomes the proximate cause of the accident and makes the negligent conduct of Wise remote. Under such circumstances they affirm that the trial court erred in not granting their motion for a directed verdict and their subsequent motion for judgment notwithstanding the verdict.

In support of their contention defendants rely upon the cases of *Johnson* v. *Union Furniture Co.*, 31 Cal. App. (2d) 234 [87 Pac. (2d) 917], and *McMillan* v. *Thompson*, 140 Cal. App. 437 [35 Pac. (2d) 419].

In the first of these cases it appeared from plaintiff's complaint that the defendant had removed a bed from the home of deceased and had agreed that it should be returned before night; that defendant failed to return the bed, which necessitated decedent sleeping on the floor, and that while so sleeping decedent contracted pneumonia, from which his death ensued. The matter came up on an appeal from an order of the trial court sustaining a demurrer without leave to amend. The District Court of Appeal affirmed the action of the trial court on the ground that the wrong alleged and the resulting damages claimed were not such as would be known by common experience to be usually and naturally in sequence, and that subsequent to the initial cause, to-wit, the failure to return the bed, there was a new intervening efficient cause, to-wit, the action of decedent himself, having its origin independent of the initial cause, which intervening cause could not reasonably have been foreseen by the defendant; that therefore there was a breaking of the connection between the act of the defendant and the incurring of the pneumonia and subsequent death and thus the initial cause became remote.

In *McMillan* v. *Thompson, supra,* defendant's truck was stopped on the right-hand portion of the paved highway. Plaintiff observed the truck when he was about 450 feet away and could see that it was completely stopped. He started to pass the truck when another car proceeding in the same direction crashed into the rear of plaintiff's vehicle. It was contended that under such circumstances the negli-

gence, if any, of defendant was not a proximate cause of the accident because of the intervening act of the third person. This court upheld such contention under the facts stating that while it was true that the driver of the stopped truck must have known that other vehicles would be likely to pass he could not have anticipated reasonably that while a car was passing his truck a third car would come from behind and crash into the passing car, and that therefore the injury resulted not only from the intervening act but from one which was not reasonably to have been anticipated by the driver of the stopped truck as the result of his own act.

We do not believe that either of the foregoing cases are determinative of the situation here. Wise stopped his truck voluntarily upon a curve and while there was evidence to indicate that a view of the rear of the cement truck was unobstructed for a distance of from 300 to 600 feet away, nevertheless it does not appear that at that distance it could have been determined whether the cement truck was on the paved portion of the highway or on the shoulder. Furthermore, there was substantial evidence in the record that there was a mist prior to and at the time of the accident and which the jury might easily have concluded prevented the deceased from determining either the position of the stopped truck or whether it was moving until he arrived at a point some 150 feet back of the stopped truck, which was the point where the witness Tedrow first observed it. In addition thereto the curve in the road obviously would interfere to some extent with a determination by deceased as to whether there was any traffic approaching from the south. As heretofore observed, both of the cases relied upon by defendants clearly point out that so far as the facts there involved were concerned there was an intervening act on the part of a third person which broke the causal connection between the alleged negligence of the defendant and the damage complained of. Here such intervening cause does not appear. Defendant stopped his truck in a matter of seconds before the impact at a point where good visibility at least was affected to some extent by the curve in the road and perhaps by the misty character of the atmosphere.

Defendants contend that the decedent driver and his father, the plaintiff, were both guilty of contributory negligence, the decedent because he was driving the sugar truck as a chauffeur, when less than eighteen years of age, and the plaintiff because he permitted such driving, knowing that decedent

had no chauffeur's license, and that he was ineligible to receive one, because of the prohibition of section 258 of the Vehicle Code, which provides: "No chauffeur's license shall be issued to any person under the age of 18 years."

Section 71 of the Vehicle Code provides as follows: " 'Chauffeur' is a person who is employed by another for the principal purpose of driving a motor vehicle on the highways and receives compensation therefor."

Defendants contend that since sections 267 and 268 of the Vehicle Code require careful examination of the applicant for a license before the issuance thereof that the Legislature must have intended to prevent all persons under the age of eighteen years from operating trucks as chauffeurs, upon the theory that a person of immature years should not attempt the intricate task of propelling such vehicles along the highway.

The record discloses that the deceased was the possessor of an operator's license, but defendants seek to point out some difference in theory between the provisions involving the issuance of operators' licenses and those governing the issuance of chauffeurs' licenses. As an abstract proposition it may be that more skill is required in the operation of a heavy truck than in the management of a pleasure vehicle, but it does not follow that the question of possession of a chauffeur's license is material in a particular case irrespective of causal connection between the violation of a statute in failing to have such license and the damage complained of.

We believe the question is disposed of in the case of *Strandt* v. *Cannon,* 29 Cal. App. (2d) 509 [85 P. (2d) 160], where the proposition was clearly laid down that the driver's negligence is to be determined by the facts of the accident, and that the failure to have an operator's license is not evidence of the driver's incompetence or negligence, or that such negligence, if any, was the proximate cause of the accident. We believe this sufficiently disposes of defendants' contention in this regard, but it may be added that the evidence presented at the time of the trial indicated that decedent was not paid compensation by his father for his services in driving the truck, but rather that he was given from time to time such amounts of money as he needed for clothing, spending money and incidental expenses. It further appears that decedent was not employed for the principal purpose of driving a motor vehicle, but that he assisted his father from time to

time in the trucking business in which his father was engaged. The decedent was therefore probably not a chauffeur in the sense referred to in section 71 of the Vehicle Code.

We are unable to say as a matter of law that there is no other reasonable conclusion deducible from the evidence than that the proximate cause of the accident was the negligence of the decedent himself.

It seems obvious that when a driver of a vehicle stops it upon a paved highway where there is a pronounced curve he must anticipate that the driver of any vehicle following him would have an obstructed vision of the highway ahead and this is particularly true under circumstances where the evidence fairly discloses that visibility is affected by atmospheric conditions.

In *Estate of Lances*, 216 Cal. 397 [14 Pac. (2d) 768], the rule with regard to directing a verdict is set down as follows:

"It has become the established law of this state that the power of the court to direct a verdict is absolutely the same as the power of the court to grant a nonsuit. A nonsuit or a directed verdict may be granted 'only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were given.' "

In *Hubbert* v. *Aztec Brewing Co.*, 26 Cal. App. (2d) 664 [80 Pac. (2d) 185, 1016], it was held that a judgment notwithstanding the verdict should be granted when a motion for a directed verdict which should have been granted has been denied and a verdict rendered against the moving party.

We are of the opinion that bearing in mind that all intendments are in favor of a verdict of a jury if opposing inferences can be drawn from the testimony, that this court should not disturb the action of the trial court in denying the motion.

As heretofore stated, the trial court granted defendants' motion for a new trial on errors of law alone. These alleged errors, as reflected by the briefs, pertain to two matters: first, alleged errors in instructions to the jury; and, second, the refusal of the trial court to permit expert testimony as to the condition of the shoulder west of the highway and the

safety and practicability of defendant parking his truck thereon.

▇▇▇ The following instruction was requested by the defendants and was refused by the court:

"You are further instructed that in order to warrant a finding by you that negligence or an act not amounting to wanton wrong is the proximate cause of an injury, it must not only appear that the injury is the natural and probable consequence of the negligent and wrongful act, but that it ought to have been foreseen in the light of attending circumstances."

The court, however, did instruct the jury as follows:

"Negligence, to be actionable, must be a proximate cause of the accident and injuries. The proximate cause of an injury is that which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred. It is the efficient cause, the one that necessarily sets in operation the factors that accomplish the injuries. It may operate directly or by putting intervening agencies in motion."

Defendants contend that the instruction on proximate cause given left out the element of foreseeableness, and that they were prejudiced by the refusal to give their instruction supplying that element. They cite in support of their position *Johnson* v. *Union Furniture Co.*, *supra*; *Newman* v. *Steuernagel*, 132 Cal. App. 417 [22 Pac. (2d) 780], and two out-of-state cases.

It is their contention that in order for an act of negligence on the part of a defendant to be a proximate cause of an injury it must appear that the injury was the natural and probable consequence of such act of negligence and that the party committing the act ought in reason to have foreseen the consequences in the light of attending circumstances.

It is true that the instructions on proximate cause failed specifically to include foreseeableness as an element of proximate cause.

Plaintiff concedes that the refused instruction is a proper one but contends that had it been given by the court it would have been merely an explanation of the instruction which was given on the subject. In this connection they direct attention to the case of *Baillargeon* v. *Myers*, 180 Cal. 504 [182 Pac. 37], where a definition of proximate cause substantially identical with that given here was designated as "satisfactory"

by the Supreme Court and to the case of *Queirolo* v. *Pacific Gas & Electric Co.*, 114 Cal. App. 610 [300 Pac. 487], where the court instructed the jury as follows:

"I instruct you that the proximate cause must be understood to be that which in the natural and continuous sequence, unbroken by any new independent cause, produces that event and without which the event would not occur."

In the latter case an instruction was refused which stated the test by which to determine the question of proximate cause by defining natural and probable consequences of a negligent act or omission as those which ought to have been foreseen or which could reasonably have been anticipated.

In commenting upon the propriety of the court's refusal to clarify or elucidate upon the meaning of the instruction last quoted the court held that the failure to give the requested instruction was not prejudicial error and used the following language:

"'Appellant concedes the correctness of this instruction, but complains that another offered by it, stating the test by which to determine the question of proximate cause, was improperly rejected. To constitute proximate cause the injury must have been the natural and probable consequence of the negligent act (*Williams* v. *San Francisco*, 6 Cal. App. 615 [93 Pac. 122]; *Marton* v. *Jones*, 44 Cal. App. 299 [186 Pac. 410]); and it has been held that the consequence must be one which in the light of the circumstances an ordinarily prudent man ought reasonably to have foreseen might probably occur as the result of his negligence. (*Benson* v. *Central Pac. Co.*, 98 Cal. 45 [32 Pac. 809, 33 Pac. 206]; *Marton* v. *Jones, supra*; *Henry* v. *Southern Pac. Co.*, 50 Cal. 176.) As has been stated, the latter rule is usually given in connection with the first as explanatory of it, that is to say, the natural and probable consequences of a negligent act or omission are those which ought to have been foreseen or could reasonably have been anticipated. (45 Cor. Jur., Negligence, sec. 483, pp. 913, 917.) The instruction given has, however, been approved as a satisfactory definition (*Baillargeon* v. *Meyers*, 180 Cal. 504 [182 Pac. 37]); and while the offered instruction correctly explained the rule and might properly have been given, we cannot say that its refusal was prejudicially erroneous.''

One distinction clearly appears between the situation confronting us and the situation in the Queirolo case. Here the

trial court granted a new trial and we must determine whether its action in so doing was an abuse of discretion whereas there the appeal was by the defendant from the judgment.

It is fundamental that where the trial court grants a new trial on the ground of errors in instructions its conclusions will not be disturbed unless it appears that its discretion has been abused. (*Pozzobon* v. *O'Donnell,* 1 Cal. App. (2d) 151 [36 Pac. (2d) 236] ; *Pettigrew* v. *O'Donnell,* 32 Cal. App. (2d) 502 [90 Pac. (2d) 93] ; *Nance* v. *Fresno City Lines, Inc.,* 44 Cal. App. (2d) 868 [113 Pac. (2d) 244].) However, here a somewhat different question is presented in that there is no contention that the instruction on proximate cause did not properly state the rule but rather that the error occurred in failure to give an instruction, the effect of which was merely to explain to the jury the rule correctly laid down in the given instruction. We must conclude, however, that the trial court was in a better position to determine whether a miscarriage of justice resulted from its failure to make the explanation and, as was said in *Pettigrew* v. *O'Donnell, supra,* "so long as the case presents an instance showing a reasonable or even fairly debatable justification for the order, such action will not be set aside on appeal."

In view of the foregoing we need dwell only briefly upon the other errors of law contended for by the defendants, but since any question should be avoided on the new trial, we will briefly allude to another instruction complained of. ██ The court instructed the jury as follows:

"You are instructed that one who parks his truck upon the paved or main traveled portion of a highway is prima facie a violator of the law, and it is incumbent upon him to show affirmatively that it was necessary to so park it at the time and place. It is not the duty of the plaintiff in a collision under such circumstances to show that such parking was not necessary, but it is the duty of the defendant to bring himself within the exception provided by the statute, as given to you in other instructions."

We are of the opinion that this instruction properly states the rule. In *Casey* v. *Gritsch,* 1 Cal. App. (2d) 206 [36 Pac. (2d) 696], and *Smarda* v. *Fruit Growers' Supply Co.,* 1 Cal. App. (2d) 265 [36 Pac. (2d) 701], almost the identical language was used by the court. Defendants contend, however, that the instruction requires the defendant to prove that it

was necessary for him to park on the highway whereas the statute (sec. 582, Vehicle Code) enjoins a parking on the highway when it is practicable to park off the highway. We must assume, however, that in both *Casey* v. *Gritsch* and *Smarda* v. *Fruit Growers' Supply Co., supra,* the word "necessary" was used advisedly and as a synonym for the word "practicable." We can find no error in this instruction.

The last specification of error, so far as reflected in the briefs, has to do with the refusal of the trial court to permit expert testimony as to whether the shoulder on the west side of the highway could safely carry defendants' truck and furthermore whether it was practicable to drive such truck onto the shoulder at the scene of the accident.

We believe the court's original ruling was correct. The physical conditions were such as to be observable by anyone at the scene of the accident. Whether or not the condition described was such as to render the shoulder unfit to carry the defendants' truck or made it impracticable to drive on the shoulder was a matter of such common knowledge that the question was one of fact to be determined by the jurors without the aid of expert testimony. The expert evidence, if allowed, would be tantamount to a declaration by the trial court that the jury might side-step its duty of judging an ultimate fact and accept the judgment of the expert. Where there is clear evidence as to the physical condition existing, expert testimony is unnecessary for the jury is as competent to draw a conclusion from the physical facts as is the so-called expert. Furthermore, the record before us discloses that defendants objected to expert testimony concerning the practicability of parking on the shoulder when such evidence was offered by the plaintiff, and therefore it is difficult to see how they can complain because the court ruled in accordance with their own theory. The text writer in 3 Am. Jur., p. 432, succinctly states the rule as follows:

". . . a party cannot complain of the exclusion of evidence and of a consequent defect in the proof if it was excluded at his request. Neither can he complain of the exclusion of evidence offered by himself, where he has successfully objected to the admission of evidence of the same character offered by the adverse party."

No other matters require attention.

Both of the orders appealed from are affirmed.

Barnard, P. J., and Marks, J., concurred.