Argued December 12, 1951, affirmed July 3, petition for rehearing
denied August 13, 1952

BLAIR *v.* RICE ET AL.
246 P. 2d 542

*James O. Goodwin,* of Oregon City, argued the cause for appellant. With him on the brief were Glenn R. Jack, of Oregon City, and Arthur B. Baines, of Portland.

*Howard K. Beebe,* of Portland, argued the cause for respondents. With him on the brief were Walter J. Cosgrave and Maguire, Shields, Morrison & Bailey, of Portland.

Before HAY, Acting Chief Justice, and ROSSMAN, LUSK, LATOURETTE and WARNER, Justices.

ROSSMAN, J.

This is an appeal by the plaintiff from a judgment which the circuit court entered in favor of the defendants after it had sustained a motion made by them for an involuntary nonsuit. The plaintiff, while a passenger in an automobile which her husband was operating, sustained a personal injury when the car skidded upon a section of icy pavement and crashed into a truck which was owned by the defendants, Thomas E. Fletcher and Norris Winzler. The truck was not in operation at the time of the collision. The driver was the defendant, Roy Rice.

The complaint avers:

"Said collision was caused by the carelessness, recklessness and negligence of the defendants and each of them in the following particulars, to-wit:

"1. That said defendants parked said truck on said highway knowing at said time that the area immediately south thereof was covered with ice and was dangerous for motor vehicles.

"2. That said defendants parked said truck on said highway without displaying any flares, flags or signal to warn approaching motor vehicles.

"3. That said defendants failed to maintain any lookout for motor vehicles approaching said highway at said time and place.

"4. That said defendants parked said truck on the main traveled portion of said highway when there was adequate room to park said truck on the shoulder of said roadway.

"That said acts of negligence and each of them were the sole and proximate cause of the collision and the injuries sustained by plaintiff."

The mishap occurred January 8, 1949, at about 3:00 p. m. upon Highway 99E, a short distance north of Hubbard. The pavement is 27 feet or more broad. The plaintiff testified:

"It was a beautiful day. The sun was shining. It was cool, but it was a very nice day, and the highway wasn't—didn't seem dangerous to us in the least. It was dry, and we were going, I imagine, about 40 miles an hour."

The car in which the plaintiff was riding was traveling north and had followed for several miles a car which was a short distance ahead.

Although the complaint alleges that the "defendants parked said truck on said highway", their brief

says that it "was engaged in salvaging or towing an unidentified panel or pick-up truck from the ditch on the east side of the highway." It will be recalled that the defendant, Rice, was the operator of the truck. The brief (plaintiff's) says:

"Rice had parked defendants' truck in a position facing northwesterly or cater-corner to the highway (Tr. 19), partially on the shoulder, and protruding into the northbound traffic lane (Tr. 3). The left-hand side of the cab and part of the bed of the truck were out on the pavement (Tr. 5). That Rice was acting within the scope of his authority is not denied."

After the brief described the day and the dryness of the pavement in words similar to those which we took from the plaintiff's testimony, it continues as follows:

"At a point some 200 feet south of the place of impact (Tr. 6, 10), plaintiff and her husband noticed that the Blair car was upon a patch of ice. At the same time (Tr. 3, 19), they noticed that the car immediately preceding them had started to skid. Then the Blair car went into a skid, contacting the vehicle ahead and sending it across the highway in a northwesterly direction. It was not until the latter vehicles were actually on the ice and the skid of the preceding vehicle was observed by them, that the Blairs saw defendants' truck in the northbound traffic lane directly ahead of them (Tr. 3, 19). After bumping the preceding car, the Blair car skidded practically straight ahead in its right traffic lane (Tr. 4), sideswiping defendants' truck and coming to a rest in a position in its right lane and against the truck (Tr. 4, 5).

"The icy patch of roadway extended from the proximity of defendants' truck and the vehicle in the ditch to a point some 150 to 200 feet south (Tr. 10). The surface of the highway over which the Blairs had been driving up to this point had been dry (Tr. 3, 19). Defendants had posted no flag-

men, watchmen, or warning devices of any type at any place to the south of their towing operation at which point their vehicle was left standing on the roadway (Tr. 5, 16, 20)."

None of the plaintiff's witnesses gave any indication of the length of time that the defendants' vehicle had been in the position mentioned in the passages which we quoted from the plaintiff's brief. So far as we know, it may have been there for no more than a very short interval. All of the witnesses referred to it as a truck. It will be recalled that the plaintiff's brief says that the truck "was engaged in salvaging or towing an unidentified panel or pick-up truck from the ditch on the east side of the highway." Apparently that statement is based upon the following testimony which was given by one of the witnesses: "It looked like some tracks where they might have pulled the vehicle or something out there, and there was a chain on the car in the ditch."

The plaintiff's husband testified:

"Q There was a straight stretch of highway leading up to the point of that accident for some distance, isn't there?

"A That's right."

Another witness, who was driving from the south, swore:

"As I approached the scene and while still some distance from it I recognized the fact that there had been an accident at that point."

A witness driving from the north, who came upon the scene of the collision a few moments after it had occurred, noticed the efforts which were under way to separate the plaintiff's car from the defendants' truck and altered his course. We set forth the above because

it indicates that the highway was straight and that drivers could see cars which were ahead.

The record contains no evidence which imputes to the defendants knowledge of the ice which was upon the pavement. The icy area, it will be recalled, extended along the pavement for possibly 200 feet. The record does not suggest that there was space adjacent to the pavement for the accommodation of the truck so that it could have been placed completely off the paved roadway.

Neither the plaintiff nor her husband had observed the ice upon the pavement until after their car had entered upon it. Evidently the driver of the car ahead also had failed to observe the treacherous condition. Those facts warrant an inference that the ice was not readily noticeable. The record does not indicate how it happened that the panel vehicle was in the ditch, nor does it offer any explanation for the presence of the defendants' truck at the place where it was struck, except so far as an explanation is afforded by the testimony which we have set forth.

The foregoing, we believe, is a fair synopsis of the evidence.

The sole assignment of error reads:

"The Court erred in granting defendants' motion for a judgment of involuntary nonsuit."

Section 115-353, OCLA, says:

"No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any highway, outside of a business or residence district, when it is practicable to park or leave such vehicle standing off the paved or improved or main traveled portion of such highway; provided, in no event shall any person park or leave standing any vehicle,

whether attended or unattended, upon any highway unless a clear and unobstructed width of not less than 16 feet upon the main traveled portion of said highway opposite such standing vehicle shall be left for free passage of other vehicles thereon, nor unless a clear view of such vehicle may be obtained from a distance of 200 feet in each direction upon such highway.

\* \* \*

"(d) Whenever the operator of a wrecker or tow-car engaged in the salvaging of another vehicle shall find it necessary to stop his vehicle so as to obstruct the roadway, such operator shall place at a suitable distance in each direction upon such roadway suitable signs or signals warning the drivers of oncoming vehicles of such operations; and such signs or signals shall be of a design approved by the state highway commission."

■ The provision last quoted (subd. d.) is applicable only to "motor vehicles equipped and intended for use in removing wrecked or disabled vehicles from roads or highways". *Gossett v. Van Egmond,* 176 Or 134, 155 P2d 304; and *Anderson v. Robbins Incubator Co.,* 143 Neb. 40, 8 NW2d 446. The plaintiff does not contend that the defendants' truck was a vehicle of that kind. Therefore subdivision d was not applicable to the defendants, and their omission to have placed along the roadway signs or signals "approved by the state highway commission" was not an act of negligence.

As we have seen, the testimony contains no evidence showing that it was practicable to have moved the defendants' truck completely off the pavement. We think that the passages which previous paragraphs of this opinion quote from evidence and from the plaintiff's brief warrant a conclusion that the truck was endeavoring to pull the panelled vehicle out of the ditch. In short, it was engaged in a lawful use of the highway.

The specifications of negligence do not charge that the defendants failed to leave available for traffic an "unobstructed width of not less than 16 feet" of pavement adjacent to the truck and, likewise, include no charge that the truck could not have been seen by motorists "from a distance of 200 feet in each direction".

■ It is manifest from the evidence which we quoted in preceding paragraphs that there was available alongside the truck far more than the required minimum space of 16 feet, and that the truck was visible to approaching motorists for a distance much greater than 200 feet. We are satisfied that the record contains nothing indicating a violation by the defendants of § 115-353, OCLA.

By reverting to the specifications of negligence which are set forth in a previous paragraph, it will be seen that they charge that (1) the defendants parked their truck upon a part of the highway "immediately south" of which, to their knowledge, the ice occurred; (2) the defendants failed to give warning by a display of signals of the presence of their truck; (3) the defendants failed to maintain any lookout for vehicles which were approaching the truck; (4) the truck was parked on the highway notwithstanding the fact that there was adequate room on the shoulder to accommodate it.

We do not believe that the record contains any evidence whatever which supports the first specification. Neither the plaintiff nor her husband detected the ice until their car began to skid upon it, and there is nothing which charges the defendants with knowledge of the slippery surface. The second specification of negligence must be held inapplicable on account of the fact that the defendants' truck was not a wrecker or

tow car. Before considering the third specification we will examine the fourth. As we have seen, the record does not show that the truck could have been moved off the pavement. That specification, that is, the fourth, must therefore be deemed unsupported.

We will now consider the third specification. The evidence contains no description of the truck and no indication of its size or color. One witness, however, mentioned its cab.

No one explained why the plaintiff or her husband failed to observe the truck until their car began to slide in its direction. Only a small part of the truck was upon the pavement. The larger part—in fact, almost all of it—was in the area immediately adjacent to the pavement. Vehicles upon a berm, or shoulder, often can be observed more readily than those upon the pavement. Further, in the area close to the truck was the panel vehicle. It is suggested, however, in the plaintiff's brief that cars ahead made it "difficult for the occupants of the Blair car to observe the position of the defendants' truck." If that is true, we do not perceive how flags or a watchman's signals would have been seen until too late.

■ Assuming, but not deciding, that the defendants negligently failed to maintain a lookout and give notice that their truck was standing upon a part of the pavement, we still do not believe that the plaintiff was entitled to recover. All of the roadway to the left of the truck was free of traffic, as is evident from the fact that the car ahead of the Blair car, after being hit by it, skidded safely along the left half of the pavement. The only reason the Blair car ran into the truck was because it had escaped from the control of the plaintiff's husband and he could not steer it away from its target. Had a flagman been present, his signals, no

matter how patent and numerous, would not have restored the control of the skidding car to its driver. The ice had taken charge of the situation. It constituted "an intervening operation of a force of nature" within the contemplation of § 451, Restatement of the Law, Torts. See *Aune v. Oregon Trunk Railway,* 151 Or 622, 51 P2d 663. If the truck, instead of being motionless, had been moving slowly upon the portion of the roadway which it occupied, the collision would, nevertheless, have occurred. Under the circumstances, the presence of the truck must be deemed a condition rather than a legal cause of the injury: *Geisen v. Luce,* 185 Minn. 479, 242 NW 8; *McMillan v. Thompson,* 140 Cal App 437, 35 P2d 419; and see *Leavitt v. Stamp,* 134 Or 191, 293 P 414.

The above disposes of all contentions that have been advanced. The judgment of the circuit court is affirmed.

Lusk, J., dissents.