[Crim. No. 6957.   Second Dist., Div. Two.   Oct. 21, 1960.]

THE PEOPLE, Respondent, v. SAMMY NELSON, Appellant.

Ellery E. Cuff, Public Defender, James P. Nunnelley and Richard W. Erskine, Deputy Public Defenders, for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

NOURSE, J. pro tem.*—Defendant appeals from a judgment entered upon a jury verdict which found him guilty of manslaughter and from the order denying his motion for new trial. The homicide which is the basis of the judgment and conviction occurred when a .22 revolver which was in the hands of appellant discharged when he was in the act of closing the door of an automobile from which he was alighting and in which the victim was seated.

There was evidence to sustain the verdict on the theory that the killing was the result of "the commission of a lawful act which might have produced death" due to the failure of the appellant to exercise "due caution and circumspection in the performance of that act."

Appellant asserts, however, that the court's instructions were erroneous and permitted the jury to found their verdict on another theory, to wit: That the killing was done "in the commission of an unlawful act not amounting to a felony" and that it is as probable that the jury did adopt this theory as it is that it based its verdict upon a finding of gross negligence on the part of appellant in handling the gun.[1]

---

[1]In order that the jury may convict of manslaughter on the theory that the homicide occurred in the commission of the lawful act which might produce death without due caution and circumspection the jury must be convinced beyond a reasonable doubt not only that the defendant was negligent but that the negligence was "aggravated, culpable, gross, or reckless." (*People* v. *Penny,* 44 Cal.2d 861, 879-880 [285 P.2d 926].)

*Assigned by Chairman of Judicial Council.

We are convinced that appellant's contentions must be upheld.

The court gave, among others, the following instructions:

"You are instructed that it is unlawful for any person within this state to carry upon his person any pistol, revolver, or other firearm *capable of being concealed upon the person* without having a license to carry such firearm." (Emphasis added.)

"Manslaughter is the unlawful killing of a human being without malice. Two kinds of manslaughter, the definitions of which are pertinent in this case, are:

"1. Voluntary manslaughter, which is that committed upon a sudden quarrel or heat of passion.

"2. Involuntary manslaughter, *which is that done in the commission of an unlawful act not amounting to a felony,* or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection." (Emphasis added.)

"To constitute a felonious homicide there must be, in addition to the death of a human being, an unlawful act which proximately caused that death.

"The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred. It is the efficient cause—the one that necessarily sets in operation the factors that accomplish the injury. It may operate directly or through intermediate agencies or through conditions created by such agencies."

Penal Code, section 12025, provides that any person is guilty of a criminal offense if he "carries concealed upon his person or concealed within any vehicle which is under his control or direction any pistol, revolver, or other firearm capable of being concealed upon the person without having a license to carry such firearm . . . ." The instruction given by the court, and quoted above, obviously omits the gravamen of an offense under Penal Code, section 12025, in that it fails to include as an element of the offense a carrying of a weapon "*concealed* upon his person or *concealed* within any vehicle which is under his control or direction." (Emphasis added.)

In effect the jury was told by these instructions that if they found that the defendant was in possession of the pistol the discharge of which caused the death and that he had no license to carry it and that his possession was the proximate

cause of death they should find the defendant guilty. Inasmuch as it was an admitted fact that the defendant had the gun at the time of its discharge and that he had no license to carry it, the only fact left for the jury to determine under this portion of the instructions was whether the unlawful possession of the gun was a proximate cause of the death.

The People, while admitting the error in the instructions, assert that the error could not have caused a miscarriage of justice inasmuch as the court properly defined "proximate cause" and as the jury must be presumed to have followed that instruction it could not have found that the unlawful possession of the pistol was the proximate cause of death; and that, therefore, their verdict must have been based upon a finding that the appellant was grossly negligent in the manner in which he handled the gun and that that was the cause of death.

While the definition of proximate cause set forth in the instructions given by the court properly sets forth the many legal facets of proximate cause, its application, i.e., what constitutes proximate cause in fact, has given rise to innumerable appeals. The appellate courts and the law writers have devoted volumes to the question as to what acts or omissions do or do not constitute proximate cause in fact within the meaning of a legal definition of proximate cause. It is aptly said by Professor Prosser in opening his article "Proximate Cause in California," 38 California Law Review, page 369, "So much has been written about proximate cause that any professor who feels an article coming on would do well to coil it and sit on it and hold his peace. . . . Proximate cause remains a tangle and a jungle, a palace of mirrors and a maze, and the very bewildering abundance of the literature defeats its own purpose and adds its smoke to the fog."

To say that a jury of laymen, upon hearing this definition read once, could not and would not find that the unlawful possession of the pistol was a proximate cause of death within the meaning of that instruction is to assume that they possess a greater understanding than many trained in the law.[2] It

[2] It is worthy of note that in at least five appeals in this state counsel have earnestly contended that the failure to have the license required by law was a proximate cause of an injury caused by the person who acted without the license. (See *Roos* v. *Loeser*, 41 Cal.App. 782 [183 P. 204]; *Strandt* v. *Cannon*, 29 Cal.App.2d 509 [85 P.2d 160]; *Hunton* v. *California Portland Cement Co.*, 50 Cal.App.2d 684, 688-689 [123 P.2d 947]; *Wysock* v. *Borchers Bros.*, 104 Cal.App.2d 571 [232 P.2d 531, 29 A.L.R.

seems to us that the jury might well have reasoned thusly: "It is admitted that the defendant had the gun in his hand, that he had no license to carry it; the court has instructed us that in so doing the defendant acted unlawfully; the gun was discharged while defendant was unlawfully carrying it; if he had not committed this unlawful act, the accident 'would not have occurred'; if unlawfully carrying the pistol could not be a proximate cause of the accident why would the judge instruct us that it was unlawful to carry the gun without a license and that a killing done in the commission of an unlawful act was manslaughter and then leave it to us to say whether it constituted a proximate cause?"

True, this line of reasoning is, from the legal standpoint, fallacious, but how can we say that the jury composed of laymen did not follow it when it was one of the lines of reasoning contended for by the district attorney.

The district attorney in his opening argument outlined to the jury orally and in chalk upon a blackboard the elements of manslaughter; first voluntary manslaughter, then of involuntary manslaughter, by a killing in the commission of an unlawful act and last, a killing in the commission of a lawful act without due caution or circumspection. He then stated to the jury, "I would take two theories here, either one of which would indicate this defendant—from his testimony, from his own defense—is guilty of involuntary manslaughter.

"Now, *the first theory that I have, and I have made a note of this,* is taking his story and, of course, accepting the stipulation as a proven fact, *that he had no license for a gun.* I believe *you will be instructed that it is an unlawful act in the State of California to carry a gun which is capable of being concealed upon the person.* This is an unlawful act. It does not amount to a felony. *There was a death,* we know that; *therefore, we have filled in what I would call the first part of this—it's a killing,* [in] *the commission of an unlawful act, not a felony.*" Later, after arguing extensively on his second theory, i.e., that the death was caused by the defendant's gross negligence in handling the gun, in closing his argument he said, "I think when you get to the juryroom in spite of the things, opinions, that have been expressed by Mr. Nunnelley, the thing you should decide is what the facts are at that par-

2d 948]; *Page* v. *Mayors,* 191 Cal. 263 [216 P. 31].) It may be further noted that the courts of last resort of some other states in the Union are of the opinion that the failure to have a license constitutes proximate cause. (See *Strandt* v. *Cannon, supra; anno.,* 73 A.L.R. 162.)

ticular afternoon and then when you have decided what happened out there, you sit down and you look at the definition, *think about the definition of involuntary manslaughter as the Judge has read it to you. . . .*" (Emphasis added.)

Certainly when this argument to the jury was followed by the erroneous instructions it is not improbable that the jury did adopt this theory for if the jury adopted it they were released from any duty to go further and agree as to whether defendant was grossly negligent in the manner in which he handled the gun. It is but human nature to follow the course of least resistance and certainly, here the course of least resistance would be that indicated by the hypothetical reasoning of the jury which we have set forth.

After review of the entire record we are of the opinion that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error. (*People* v. *Watson,* 46 Cal.2d 818, 836-837 [299 P.2d 243] ; cf. *People* v. *Sica,* 76 Cal.App. 648 [245 P. 461].)

The judgment is reversed.

Fox, P. J., and Ashburn, J., concurred.