STATE EX REL. ROBERT EACKER, PETITIONER, v. THE DISTRICT COURT OF THE ELEVENTH JUDICIAL DISTRICT OF THE STATE OF MONTANA, IN AND FOR THE COUNTY OF FLATHEAD, AND THE HONORABLE ROBERT C. SYKES, A JUDGE THEREOF, RESPONDENTS.

No. 11764.

Submitted October 17, 1969.

Decided October 17, 1969.

459 P.2d 686.

Murphy, Robinson, Heckathorn & Phillips, Kalispell, I. James Heckathorn argued, Kalispell, for petitioner.

Francis J. McCarvel argued, Kalispell for respondents.

PER CURIAM:

Original proceeding. Upon the filing of this application for writ of supervisory control counsel was heard ex parte and an alternative order to show cause was issued. Upon the return day petitioner and respondent court appeared by coun-

sel and they were heard in oral argument and the cause submitted.

From the record its appears that in the eleventh judicial district court of Flathead County an action entitled "Edward C. Simpson, Plaintiff, v. Richard A. Bezdecny, Robert Ridgeway and Robert Eacker, Defendants" was filed, it being an action seeking damages for injuries as a result of a motor vehicle accident near Kalispell, Montana. Depositions of all parties were taken and they are on file and pretrial memorandums have also been filed.

Briefly, the facts are that petitioner owns a logging truck that was being operated by his employee at the time of the accident. The logging truck was proceeding on a highway at approximately 1:45 a.m. when the driver stopped to assist a lady who had had a blowout or flat tire and run into the ditch. The driver agreed to pull the car onto the highway and help her change the tire. While thus engaged the logging truck was struck from behind by a vehicle operated by one Richard A. Bezdecny and carrying the plaintiff Edward C. Simpson as a passenger.

The plaintiff's contention in the district court was that since the logging truck was engaged in the act of extricating the disabled vehicle from the ditch that section 32-21-161, entitled "Commercial Tow Car Requirements" applies to the logging truck.

Petitioner here contends that such regulations do not apply to his logging truck which was then and there engaged in a good Samaritan act.

On October 3, 1969, the district judge made a ruling on this legal question, holding "that if the evidence indicates the logging truck was being used as an emergency tow car for that purpose, it is my opinion that the law requires the same obligations and duties of the vehicle as a commercial tow car. It is my opinion that any other interpretation would be contrary to public policy and would in effect say that an

emergency vehicle without proper equipment could properly do something that a commercial vehicle could not do."

Petitioner here contends that this ruling of the court is erroneous, placing upon him a degree of care not contemplated by law. Since petitioner admits his logging truck did not comply with the commercial tow car requirements, he is being forced to trial knowing that he cannot win and his only remedy would be an appeal following such trial. Petitioner further asserts the case is complicated by multiplicity of defendants and in such circumstances the remedy by appeal is inadequate and that petitioner has no other plain, speedy and adequate remedy at law and supervision of the district court by writ is necessary and proper.

Respondent court orally moved to quash the order to show cause on the ground that appeal affords a sufficient remedy to petitioner. However, this case presents much the same situation as appeared in State ex rel Buttrey Foods, Inc. v. Dist. Court, 148 Mont. 350, 420 P.2d 845, and what we said therein is applicable here:

"In State ex rel. Regis v. District Court et al., 102 Mont. 74, 77, 55 P.2d 1295, 1297, this court described the nature and use of writ of supervisory control in this manner: '* * * it is the nature of a summary appeal—a shortcut—to control the course of litigation in the trial court * * * and may be employed to prevent extended and needless litigation.' Recently in State ex rel. Ryder v. District Court, [148 Mont. 56], 417 P.2d 89, 23 St.Rep. 523, the writ was used to prevent needless litigation. This is a proper case for the use of the writ. See, also, Rule 17, M.R.App.Civ.P.''

The motion to quash is denied.

Turning then to the court's pronouncement of its views with respect to the statute.

Section 32-21-161, R.C.M.1947, reads: "*Commercial tow car requirements.* Every commercial tow car used to tow a vehicle by means of a crane, hoist, tow bar, tow line, or dolly shall:

(a)  Be equipped with and carry not less than two (2) red flares or two (2) red lanterns or two (2) warning lights or reflectors, which reflectors shall be of a type approved by the Montana highway patrol board.

(b) Be equipped with at least two (2) highway warning signs of a uniform type prescribed by the Montana highway patrol board and shall be so designed as to be visible both day and night. The operator of a commercial tow car used for the purpose of rendering assistance to other vehicles shall, when the rendering of assistance necessitates the obstruction of any portion of the roadway outside a business or residence district, place a highway warning sign two hundred (200) feet in advance of and two hundred (200) feet to the rear of the disabled vehicle ,except as otherwise provided in this section. When a motor vehicle is disabled on the highway, such tow car operator called to render assistance during the hours of darkness shall immediately upon arrival place warning signs upon the highway as prescribed in this section and in addition thereto shall place not less than one (1) red flare, red lantern or warning light or reflector in close proximity to each warning sign.

(c) Be equipped with and carry a fire extinguisher of at least two (2) quart capacity of a type capable of extinguishing a fire.

(d) Be equipped with a lamp emitting a flashing or steady red light mounted on top of the cab of the tow car or on the top of the crane or hoist if such light can be seen from the front of the tow car. The light from such lamp must be visible for a distance of one thousand (1,000) feet under normal atmospheric conditions, and shall be mounted in such a manner that it can be securely fastened with the lens of the lamp facing the rear of the tow car upon which it is mounted. When standing at the location from which the disabled vehicle is to be towed, the operator of the tow car may unfasten the red light and place it in any position deemed advisable to warn approaching drivers. When the disabled vehicle is ready for

towing the red light must be turned to rear of the tow car upon which it is mounted and securely locked in this position. Additional red lights of an approved type may be displayed at either or both sides of the tow car as the case may warrant during the period of preparation at the location from which the disabled vehicle is to be towed.

(e) Be equipped with one (1) or more brooms and the operator of the tow car engaged to remove a disabled vehicle from the scene of an accident shall remove all glass and debris deposited upon the roadway by the disabled vehicle which is to be towed.

(f) Be equipped with and carry a shovel and whenever practical the tow car operator engaged to remove any disabled vehicle shall spread dirt upon that portion of the roadway where oil or grease has been deposited by such disabled vehicle.

(g) Be equipped and carry a portable electrical extension cord for use in displaying a light on the rear of the disabled vehicle. The length of such extension cord shall not be less than the length of the combined vehicles and whenever a disabled vehicle is towed during the hours of darkness and the rear lamp or lamps on the disabled vehicle cannot be lighted, the tow car operator shall provide for such rear light by means of the extension cord herein referred to.

The owner or operator of a commercial tow car who complies with the requirements of this section may stop or park such tow car upon a highway for the purpose of rendering assistance to a disabled vehicle, notwithstanding other provisions of this code.''

It appears obvious to us that this statute applies only to tow cars operated on a commercial basis and that it would not apply to private vehicles and the interpretation of the district court is incorrect.

We are not alone in such an interpretation. In Gosett v. Van Ekmond, 176 Or. 134, 155 P.2d 304, a case wherein a Plymouth

automobile had been driven in front of a stalled vehicle for the purpose of towing it. The Oregon statute provides:

"Whenever the operator of a wrecker or two-car engaged in the salvaging of another vehicle shall find it necessary to stop his vehicle so as to obstruct the roadway, such operator shall place at a suitable distance in each direction upon such roadway suitable signs or signals warning the drivers of oncoming vehicles of such operations; * * *."

The Oregon Court held that these statutes did not apply to private vehicles and said:

"Moreover, we think that it would be a distortion of the statute to apply to the plaintiff's Plymouth car, under the circumstances in this case, the designation of a 'wrecker or tow car', which appellant sought to do. We think that what the Legislature had in mind, in using those terms, were motor vehicles equipped and intended for use in removing wrecked or disabled vehicles from roads or highways. This interpretation is justified, not only by the tenor of the statute as a whole, but particularly by subdivision (d), which requires the operator of a wrecker or tow car who, in his salvage operations, finds it necessary to stop his vehicle so as to obstruct the highway, to place in each (either) direction upon the road, suitable signs or signals of a design approved by the State Highway Commision, to warn the drivers of oncoming vehicles of such operations. That such provisions apply to ordinary automobiles, even when used as tow cars, is a novel suggestion which does not appeal to us as being a reasonable construction of the language of the statute."

The case was reaffirmed in Blair v. Rice, 195 Or. 587, 246 P.2d 542 (1952). To the same extent as Anderson v. Robbins Incubator Co., 143 Neb. 40, 8 N.W.2d 446.

Let a writ of supervisory control issue, directing respondent court to vacate, set aside and annul its ruling of October 3,

42

1969, and to hold that the provisions of section 32-21-161, R.C.M.1947, are not applicable to the logging truck of petitioner herein.