[Crim. No. 1283. First Appellate District, Division One.—February 27, 1926.]

## THE PEOPLE, Respondent, v. ANGELO SICA, Appellant.

[1] CRIMINAL LAW—INVOLUNTARY MANSLAUGHTER—ACCIDENTAL DISCHARGE OF FIREARM.—Manslaughter is the unlawful killing of a human being, without malice, either voluntarily upon a sudden quarrel or heat of passion, or involuntarily in the commission of an unlawful act, not amounting to felony, or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection; and where the death results from playing or skylarking with or the reckless handling of firearms, it is involuntary manslaughter, the killing being the result of the commission of a lawful act which might produce death, without due caution or circumspection.

[2] ID. — LAWFULNESS OF ACT — EVIDENCE — INSTRUCTIONS. — In this prosecution for manslaughter because of the killing by defendant of another boy by the accidental discharge of a shotgun while the former was pointing the gun, in play, at the latter, the evidence was sufficient to sustain a conviction, and justified the submission of the cause to the jury, on the theory of involuntary manslaughter, but under the evidence, it was prejudicial error for the trial court to submit the cause to the jury upon the additional theory that the killing was brought about by defendant while the latter was engaged in the commission of an unlawful act not amounting to a felony.

[3] ID.—THEORIES OF KILLING—INSTRUCTIONS.—In a prosecution for manslaughter, the defendant may be found guilty on two different theories, and a jury may be instructed on as many theories as are logically deducible from the testimony.

[4] ID.—ERRONEOUS THEORY—INSTRUCTIONS—APPEAL.—Where, from an examination of the entire record, the appellate court is unable to determine whether the defendant would or would not have been convicted by the jury had instructions on an erroneous theory not been given, section 4½ of article VI of the constitution is not applicable and the judgment of conviction cannot be sustained.

(1) 29 C. J., p. 1122, n. 39, p. 1125, n. 75, p. 1148, n. 36, p. 1149, n. 49, p. 1155, n. 17 New. (2) 30 C. J., p. 317, n. 71, p. 398, n. 40, p. 399, n. 44, p. 411, n. 50, p. 417, n. 91. (3) 2 C. J., p. 1346, n. 64, 66; 16 C. J., p. 1043, n. 37, p. 1047, n. 65; 17 C. J., p. 342, n. 97; 30 C. J., p. 335, n. 66. (4) 17 C. J., p. 276, n. 40, p. 369, n. 6.

3. Wanton or reckless use of firearms without express intent to inflict injury as manslaughter, notes, 5 A. L. R. 603; 23 A. L. R. 1554. See, also, 13 Cal. Jur. 607, 616.

APPEAL from a judgment of the Superior Court of Fresno County. Denver S. Church, Judge. Reversed.

The facts are stated in the opinion of the court.

Carl E. Lindsay and Lindsay & Gearhart for Appellant.

U. S. Webb, Attorney-General, and L. B. Browne for Respondent.

KNIGHT, J.—On October 23, 1924, Norval M. Hyde, twenty-one years of age, was killed by the accidental discharge of a shotgun in the hands of the defendant Angelo Sica, seventeen years of age, while the latter was pointing the gun, in play, at Hyde. Sica was informed against by the district attorney for the crime of manslaughter, and upon trial was convicted, the jury recommending leniency. After denying a plea for probation, the trial court sentenced Sica to imprisonment in the state prison at San Quentin. Sica has appealed, and for a reversal of judgment urges two principal grounds—first, insufficiency of evidence, and, secondly, errors of the trial court in the matter of giving instructions to the jury, which he claims deprived him of a fair trial.

The circumstances leading up to and attending the death of Hyde, as shown by the evidence, were as follows: Hyde and a young man named Farlinger were employed on certain premises near Fresno operated as a gun club, and lived in a tent on the property. Hyde and Sica were friends. About a week previous to the fatal shooting Sica had called on Hyde at the gun club's property and was invited by Hyde to visit him again. On the day of the accident Sica and three boy companions went for a ride in an automobile belonging to one of the boys and, being in the vicinity of the gun club, went over to see Hyde, arriving at the gun club about 5 o'clock in the afternoon. As they drove in, Farlinger was working in a ditch near by and Hyde rode up on horseback from the field. After an exchange of greetings all around, Hyde and Sica shaking hands in a friendly manner, the boys proceeded to chop an old log lying on the ground into firewood, and then engaged in target practice with a revolver which one of Sica's companions had brought with him. During the target practice Sica went into the

tent, and brought out a double-barreled hammerless shotgun and two cartridges, inserting the cartridges in the gun on his way out of the tent. After loading the gun he pointed it at the fence and other objects, whereupon the other boys warned him to "be careful with that gun" and to "look out for that gun, it is loaded—accidents happen"; notwithstanding these admonitions, Sica pointed the gun at Hyde, who was still astride the horse, fifteen or twenty feet distant. As Sica pointed the gun at Hyde, one of the boys again warned him to be careful, and Hyde laughingly said to Sica, according to the testimony of Farlinger and another boy named Vaccaro, "Don't point that gun at me, you bastard, or I'll pull this on you," or words to that effect, exhibiting the pistol with which he and the others had been shooting at the target. A few seconds later the gun was accidentally discharged, the load striking Hyde in the left side of the back, and he fell from the horse. Sica, dropping the gun, exclaimed, "God, what did I do!" and rushed to Hyde's assistance. The boys lifted Hyde into the automobile and hurried him to the hospital, but he died before arriving there. According to Vaccaro's testimony, Sica at the time the gun was discharged, was holding it with the butt to his shoulder, pointing it at Hyde, although not aiming it at him. L. Saladino, another boy, testified in regard to this point as follows: "I looked around again and saw Angelo pointing the gun at Hyde, and Hyde said, 'Look out, you bastard, don't shoot me, or I will pull this on you.' So when he says that, Angelo Sica turned the gun away and then put it up again in a position like this, toward his waist-line, and held it there a matter of a few seconds, and then put it up a little higher, and they were joking and laughing again, him and Hyde, and he said, 'Don't point that gun at me. What the hell is the matter with you, you damn fool?' And Angelo Sica was laughing and I looked around to see the well they were drilling, and heard a report, and I turned around and saw Hyde fall off the horse." Sica's statement, taken by a deputy district attorney on the night following the accident, and afterwards introduced in evidence at the trial as part of the People's case, was in substantial accord with the versions given by his companions. Although he could give no accurate account of the exact cause for the discharge of the gun, he stated that he was pointing it at Hyde,

and when he turned his head temporarily to look toward the other boys it was discharged; that he was grasping the stock of the gun "where you hold your fingers" and that he thought he was holding it "on the rim." The evidence further shows that Sica was not familiar with the use of a shotgun, never having handled or discharged one before.

The contention of appellant that the evidence is insufficient to sustain a conviction of manslaughter is based in part upon the proposition that the gun was accidentally and not wilfully discharged, and that consequently appellant was guilty of no crime. It is argued in support thereof that the evidence, taken as a whole, shows that the death of Hyde was the result of misadventure; that it was the case of a number of boys playing with firearms, and that unfortunately one of the firearms, being at the time in the hands of the appellant, was accidentally discharged; that the firing of the gun was not a voluntary act on his part at all, and that therefore appellant was not criminally responsible. The contention cannot be sustained.

[1] Manslaughter is the unlawful killing of a human being, without malice. It is of two kinds: (1) Voluntary—upon a sudden quarrel or heat of passion. (2) Involuntary—in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection (Pen. Code, sec. 192); and it has been held in this state, as in others, that where the death of a human being results from playing or skylarking with or the reckless handling of firearms, it is involuntary manslaughter, the killing being the result of the commission of a lawful act which might produce death, without due caution and circumspection. (*People* v. *Searle*, 33 Cal. App. 228 [164 Pac. 819].) Upon this branch of the case we believe the jury was properly instructed. (*People* v. *Wilson*, 193 Cal. 512 [226 Pac. 5].)

[2] The cause was submitted to the jury, however, not on the one theory of involuntary manslaughter, but, under instructions of the court, upon the additional theory that the death of Hyde was brought about by appellant while the latter was engaged in the commission of an unlawful act not amounting to a felony; and appellant contends that the giving of instructions upon said second theory constituted

prejudicial error for the reason that there was no evidence before the jury upon which such theory could be based.

When the prosecution rested its case, counsel for appellant, in the absence of the jury, moved that the court advise the jury to acquit. At the conclusion of the argument on the motion the court stated: "Well, another phase of it, gentlemen, I think we have a statute there to the effect that any one who exhibits a deadly weapon in a rude and threatening manner in the presence of two or more witnesses is guilty of a misdemeanor," to which counsel for the prosecution responded, "Section 417 of the Penal Code"; and after some further discussion as to the meaning of the words "rude" and "threatening," the court denied the motion. Appellant offered no evidence, but upon this branch of the case proposed an instruction, which, after setting forth the code definition of manslaughter, read: "You are instructed that there is no evidence in this case which justifies the conviction of the defendant of voluntary manslaughter, *nor is there any evidence in the case which justifies his conviction of involuntary manslaughter because of the commission of an unlawful act not amounting to felony.* It is for you to determine from all the evidence in the case whether the prosecution has proved beyond a reasonable doubt and to a moral certainty that the death of Norval M. Hyde was caused by the defendant in the commission of a lawful act which might produce death in an unlawful manner, or without due caution and circumspection. Unless you are satisfied beyond a reasonable doubt that such proof has been made you must acquit the defendant." (Italics ours.) The trial court gave to the jury that part of the proposed instruction embodying the code definition of manslaughter, but refused to give those portions just quoted.

In lieu of instructing the jury as requested in the italicized portion of said proposed instruction, the court gave the following instructions: "You are further instructed that every person who, not in necessary self-defense, in the presence of two or more persons, draws or exhibits any deadly weapon in a rude, angry, and threatening manner, or who, in any manner, unlawfully used the same, in any fight or quarrel, is guilty of a misdemeanor." (Pen. Code, sec. 417.) This instruction was followed by one to the effect that if the jury was satisfied beyond a reasonable doubt that

"the defendant, Angelo Sica, *was committing an unlawful act, not amounting to a felony,* or doing a lawful act in an unlawful manner, or doing a lawful act without due caution and circumspection, and while doing such unlawful act, or doing such lawful act in an unlawful manner, or without due caution and circumspection, said defendant Angelo Sica shot Norval Hyde, . . . " inflicting injuries upon him from which he died, the jury should find the appellant guilty of manslaughter as charged in the information. (Italics ours.)

[3]  It is doubtless true that a defendant may be found guilty of manslaughter on two different theories (*People* v. *Hubbard,* 64 Cal. App. 27 [220 Pac. 315]), and a jury may be instructed on as many theories as are logically deducible from the testimony (*People* v. *Byrnes,* 30 Cal. 206; *People* v. *Quimby,* 6 Cal. App. 482 [192 Pac. 493]); but there is no evidence whatever in the instant case of a fight or quarrel, nor is there any proof from which the inference might be reasonably and logically deduced that said weapon was exhibited in an "angry" manner, conceding that the manner of its use was both rude and threatening.  Anger is defined to mean a strong passion or emotion or displeasure or antagonism excited by real or supposed injuries or insults to one's self or others by the intent to do such injury, resentment, wrath, rage, fury, passion, ire, gall, choler, indignation, spleen.  "Anger" and "passion" are interchangeable, and mean practically the same thing. (*Morris* v. *Territory,* 1 Okl. Cr. 617 [99 Pac. 760, 768, 101 Pac. 111], quoting Webster's Dictionary.)  Anger is not ordinarily classed as mental suffering.  The Standard Dictionary defines it as "violent and vindictive passion or emotion caused by injury or insult real or imagined." (*Ft. Worth & R. G. Ry. Co.* v. *Jones,* 38 Tex. Civ. App. 129 [85 S. W. 37].)  The testimony given by all of the witnesses to the shooting was that Hyde and Sica were laughing and joking up to the time the shot was fired; and all of the circumstances attending the tragedy prove beyond question that preceding it the boys were in an amiable and friendly mood.  The word "angry" as used in said section 417 is not synonymous in its meaning with either of the other two adjectives employed therein and the three being used conjunctively, the distinctive elements represented by the three words must be present before

the act becomes unlawful. It will therefore be seen that without the element of anger being present in the use of said weapon by appellant the whole theory that the death of young Hyde was caused by appellant while in the commission of an unlawful act not amounting to a felony must fall; and therefore the giving of instructions authorizing a verdict of guilty on that theory and the refusal to give appellant's instruction in negation thereof constituted error. "Instructions are always to be given with reference to the facts proved before the jury." (*People* v. *Byrnes, supra;* 8 Cal. Jur. 321.) "No instruction should be given to the jury which is not predicated upon some theory logically deducible from some portion of the testimony. Such instructions are only calculated to confuse and mislead the jury, and ought not to be given." (*People* v. *Sanchez,* 24 Cal. 28; 8 Cal. Jur. 322.) In *People* v. *Devine,* 95 Cal. 227 [30 Pac. 378], it is said: "In some cases an inapplicable instruction can do no harm, but when it is liable to mislead a jury, to the prejudice of one of the parties, it becomes as grave an error as though it were not correct as an abstract proposition of law." In *People* v. *Roberts,* 1 Cal. App. 447 [82 Pac. 624], the court quotes approvingly from Blashfield on Instructions to Juries, wherein the author says: "The giving of an instruction not supported by the evidence is sufficient ground for reversal where it appears that such instruction misled, or might have misled the jury, to the prejudice of the party complaining. . . . " Under the present state of the law, "instructions which are calculated to mislead the jury under the circumstances of the case are erroneous and require a reversal, if they result in a miscarriage of justice" (8 Cal. Jur. 628) ; and in the recent case of *People* v. *Hoffman,* 195 Cal. 295 [232 Pac. 974], wherein the accused was charged with murder, in considering an instruction given for the people involving a theory of self-defense, the court said: "There is no evidence to support any such theory, and the instruction was calculated to confuse the jury." This was one of several grounds upon which the judgment was reversed.

In the instant case it cannot be determined upon which of the two theories the jury founded its verdict. If founded upon the theory of the inapplicable instruction, the verdict is not supported by the evidence, and in that event appellant

was not fairly convicted and the verdict amounts to a miscarriage of justice. In the case of *People* v. *MacPhee*, 26 Cal. App. 218 [146 Pac. 522], after pointing out error in the admission of testimony, it was said, "After a most careful consideration of the entire cause including the evidence, but without the presence of the actual witnesses before us, we are unable to determine whether the defendants would or would not have been convicted by the jury had this erroneously admitted testimony been withdrawn from their consideration. This being so, we do not feel that section 4½ of article VI of the Constitution can be given application to uphold the judgment in the case at bar." The same rule of reversal was followed in *People* v. *Columbus*, 49 Cal. App. 761 [194 Pac. 288]. A like situation confronts us in the instant case. **[4]** We have examined the entire record and are unable to determine whether the defendant would or would not have been convicted by the jury had the instruction on the erroneous theory not been given. In this state of the record the judgment cannot be sustained.

The judgment and order appealed from are therefore reversed.

Tyler, P. J., and Cashin, J., concurred.