[Civ. No. 11522. First Dist., Div. Two. Jan. 9, 1942.]

IDA MURPHY, Appellant, v. RETIREMENT BOARD OF SAN FRANCISCO CITY EMPLOYEES' RETIRE- MENT SYSTEM et al., Respondents.

James C. Purcell and William E. Ferriter for Appellant.

John J. O'Toole, City Attorney, and Reynald J. Bianchi, Deputy City Attorney, for Respondents.

NOURSE, P. J.—The petitioner sued for a writ of mandate requiring respondents to grant her a pension as the widow of a former member of the municipal police department. Trial was had upon the record of the proceedings of the respondent board which resulted in a denial of petitioner's application for a pension.

The case is based upon the claim that the deceased suffered

a heart occlusion, or thrombosis, while he was ascending the stairs of the central police station on February 10, 1936, and that this injury caused, or aggravated, his death two years later. The evidence was that the deceased fell upon the stairs at that time, was unconscious for about five minutes, and later suffered headaches and pains in his ribs. In April, 1936, he was relieved from active service because of a pre-existing knee injury. The petitioner and the deceased were separated in 1934. She had obtained an interlocutory decree of divorce, and had not seen deceased since February, 1936.

On the trial before the respondent board, and before the trial court, the petitioner endeavored to show that the deceased suffered a heart occlusion, or thrombosis, while ascending the stairs, and that this was "an acute stage of his coronary disease and the exciting cause of his death therefrom." The trial court found that the evidence adduced before the board failed to show that "the exertion of walking up said stairs was a cause of said heart thrombosis and/or heart occlusion which resulted in an infarct and caused the death. . . ." The trial court thereupon sustained the action of the respondent board, and the appeal is taken from that judgment. On this appeal we must assume in support of the judgment that the respondent board found that petitioner had failed to prove that the death of the officer resulted from an injury received while in the performance of his duties.

It is difficult to understand the theory upon which this appeal is based. It seems to be that if an appellant merely states that there is no conflict in the evidence, or no evidence to support the material findings of the trial court, the burden is forthwith cast upon the respondent, or upon the appellate court, to sustain the judgment. The accepted rules of appellate procedure are that this court will assume the fairness and integrity of the trial court, and will indulge in all presumptions and inferences in support of its findings and judgment until error is affirmatively shown. The burden is always upon the appellant to show "that the error complained of has resulted in a miscarriage of justice." Constitution art. VI, section 4½.

 When the case is one in mandamus to "review" the trial and judgment of an administrative, or quasi-judicial board, the function of the trial court is not that of a court sitting in a trial *de novo*. We endeavored to make this clear

in *Hogan* v. *Retirement Board,* 13 Cal. App. (2d) 676, 677 [57 Pac. (2d) 520], where we said: ''When the law gives to a fact-finding body the power to hear and determine a question of fact, the judgment of that body will not be controlled by *mandamus* in the absence of a showing that it acted arbitrarily, capriciously or fraudulently, or without due regard for the rights of the applicant. (*Mogan* v. *Board of Police Commrs.,* 100 Cal. App. 270 [279 Pac. 1080] ; *Sevina* v. *Hickock,* 113 Cal. App. 301 [298 Pac. 116] ; *McColgan* v. *Board of Police Commrs.,* 130 Cal. App. 66 [19 Pac. (2d) 815].)''

▮ Now the trial court herein found that ''in denying the application for pension and in denying the application for rehearing of said application for pension, said defendants sitting as said Retirement Board did not act arbitrarily or in abuse of the discretion in them residing and did not act capriciously therein.'' The burden was thus cast upon the appellant to affirmatively show that this finding was error. But the appellant assumes that it is sufficient to show that a heart occlusion *might* have occurred at the time of the fall and that the respondent board was therefore bound to find that death resulted from that particular event. But the weakness of the theory is that the petitioner's evidence discloses nothing more than that the occlusion might have occurred at that time, but that other evidence was just as persuasive that the fall was the result of other causes, that it did not produce the occlusion, and that the heart infarct might have resulted from any one of many causes, either before or after the fall. Thus the conjectures which the appellant makes as to the cause of death are no more convincing than those to the contrary. ▮ But, in any event, the entire evidence was such that reasonable minds might have fairly drawn the inferences and conclusions which are the subject of this attack—and that should settle the controversy.

But here the appellant contends that because of her statement that there was no conflict in the evidence as to when the heart occlusion occurred and that this was the exciting cause of death, the judgment must be reversed unless we prove the contrary. In matters of this kind we never assume that counsel will intentionally make a statement that is in direct conflict with the facts. Rather we assume that they have inadvertently overlooked essential facts and given a partisan

examination of the record. Though we have never conceived it to be the function of an appellate court to burden an opinion with a full recital of the evidence to disprove counsel's declaration that there is no evidence to support a finding, there are cases where that is made necessary because of indifference to the accepted rules of legal procedure. Here the cause was heard by an able and experienced trial judge who was fully aware of the difficulties confronting the respondent board upon the original trial. He entered the findings after an examination of all the evidence taken at the hearing. The appellant contends that there was no evidence to support the finding that the evidence before the respondent board was conflicting. We recite some of it.

On May 16, 1934, the deceased was examined by Dr. Twitchell because of his complaint of a serious mental condition which the deceased ascribed to a knee injury which he suffered in 1923. The deceased admitted that he had been disarmed while about to commit suicide and that his wife and daughter had left his home. The physician reported from his examination that the knee injury had nothing to do with "bringing about a disturbed mental state" and recommended harmony in the household.

On February 21, 1936, the deceased was examined by Dr. Shumate to whom he stated that, on February 10th he "fell down the stairs at the police station and struck his head and right leg." The deceased also stated that "about one month ago" he fell or was knocked down and "struck his head on the pavement" and also suffered a broken rib. The physician then gave this diagnosis: "Chronic alcoholism; possible mild head injury. X-ray of skull negative."

On March 6, 1936, the deceased was examined by Dr. Oliver. The chief complaints were "headache, dizziness." The examination disclosed that on January 4, 1936, the deceased was knocked down "probably hitting his head on the sidewalk," and was kicked in the ribs. "At this time he began having a steady constant frontal and occipital headache" and occasional dizzy feelings. On February 10, 1936, *"he slipped and fell* down the stairs," and for the rest of the day suffered with headache and pains in the lower ribs. As a result of this examination the physician concluded that: "The mental changes consisting of garrulousness, unstable emotions, and defective memory could be due either to alcohol, or to

an early cerebral arteriosclerosis. In favor of the latter is the appearance of the retinal arteries.'' He submitted his diagnosis as ''1. Chronic Alcoholism, based upon the history as received from the patient and from Dr. Shumate, and also upon nerve tenderness.

''2. Early Cerebral Degenerative Changes, based upon (1) or upon cerebral arteriosclerosis.''

On October 26, 1936, Dr. Oliver reported that he had examined the deceased again and found that he was still suffering from defective memory and head pains and that his diagnosis ''is as before cerebral arteriosclerosis.''

At the time of the death of deceased on March 23, 1938, an autopsy was performed which disclosed the following: ''Lungs: Bilateral dependent broncho pneumonia. Heart: Shows an aneurysmal dilatation of left ventricle, the result of an old infarct which has been repaired by calcification.'' Cause of death: ''Coronary sclerosis, myocardial infarction. Broncho pneumonia (Terminal).'' No examination of the head was made.

All this evidence which was before the respondent board was offered at the hearing before the trial court by the petitioner without objection to its competency or relevancy. It is significant that throughout the many years of illness of the deceased, and in the numerous physical examinations and medical treatments which the deceased was subjected to, no mention was made of any heart condition, or of any symptoms of heart disease or weakness; that though several physicians separately examined him, took his history for a period of over ten years, and listened to all his complaints, no one records any evidence of a heart condition, or of any complaint of that nature. One piece of evidence which was before the respondent board, but which does not appear in the exhibits on file herein, is the report of Dr. Harbaugh made March 23, 1936, within six weeks of the fall. It appears from the transcript of the testimony that, in answer to the question relating to the condition of ''heart and blood vessels'' the doctor answered ''normal.''

The foregoing is a part of the evidence upon which the trial court based its findings: ''That the whole of said evidence adduced before said defendants sitting as said Retirement Board failed to show that the heart occlusion and/or heart thrombosis from which said John J. Murphy died or any

other thrombosis and/or heart occlusion occurred while said John J. Murphy was climbing said Central Police Station stairs on said February 10, 1936, or that the exertion of walking up said stairs was a cause of said heart thrombosis and/or heart occlusion which resulted in an infarct and caused the death of said John J. Murphy or of any heart occlusion or of any heart thrombosis." Also "that the evidence adduced before said defendants sitting as said Retirement Board showed that said John J. Murphy died on the 23rd day of March, 1938, from a disease which had no connection with any injury suffered by the said John J. Murphy while performing his duties as a member of the said Police Department of said City and County of San Francisco."

It is true that after the death of deceased the petitioner produced medical witnesses who gave favorable opinions of the cause of death based upon questions favorable to petitioner's theory, but the respondent board, with many years of experience as to the ease with which such witnesses may be produced, was not compelled to accept those opinions in the face of the positive evidence of those physicians who had examined and treated the deceased in his lifetime. With this state of the record the trial court correctly found that the evidence before the board was in conflict as to whether the deceased suffered a heart occlusion or heart thrombosis while climbing the stairs in February, 1936, which caused or excited the death in 1938. In support of the finding it should be added that the petitioner's witnesses concurred in the opinion that the heart occlusion might have occurred from many other causes either before or after the fall.

It was a fair inference to be drawn from this evidence that either the pre-existing knee injury, or the pre-existing head injury, or the chronic alcoholism, caused the deceased to slip and fall while ascending the stairs and the triers of the fact were not concluded by the opinions of those physicians who had made no physical examination of the deceased and who formed their opinions without regard to the evidence of those who had personally examined and treated the deceased in his lifetime.

From our examination of the entire record we are forced to the same conclusion made by the trial court—that the respondent board did not act arbitrarily or capriciously, but that the petitioner was given a full and fair hearing, and that the judgment of the board was based upon conflicting

evidence and upon fair and reasonable inferences which might properly have been drawn therefrom.

The judgment is affirmed.

Sturtevant, J., and Spence, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 9, 1942. Carter, J., voted for a hearing.