[Civ. No. 13703.   Second Dist., Div. One.   June 29, 1943.]

A. CAMINETTI, Jr., as Insurance Commissioner, etc., Appellant, v. IMPERIAL MUTUAL LIFE INSURANCE COMPANY (a Corporation), Respondent.

Earl Warren, Attorney General, Robert W. Kenny, Attorney General, John L. Nourse, Deputy Attorney General, and Peery Price, Special Counsel, for Appellant.

Chas. R. Thompson and Sherman & Sherman for Respondent.

WHITE, J.—This is an appeal by the Insurance Commissioner of the State of California from a judgment rendered pursuant to section 1012 of the Insurance Code restoring to Imperial Mutual Life Insurance Company (hereinafter referred to as Imperial Mutual) business and properties which had theretofore been taken over by the commissioner under section 1011 of the Insurance Code.

The insurance company here involved was incorporated in 1927 as a mutual benefit association under the assessment plan as provided for in what was commonly known as chapter 4 of the Civil Code. Chapter 4 was thereafter superseded by chapter 8 of the Insurance Code (secs. 10640 to 10780, inclusive), and all such chapter 4 mutual benefit associations were automatically placed under chapter 8 of the Insurance Code (sec. 10669, Ins. Code).

From the adoption of the Insurance Code on September 15, 1935, until the latter part of 1936, Imperial Mutual was operated under chapter 8 of part 2, division 2 of that code. It was, in other words, conducted upon the "mutual benefit assessment plan." Its policies did not provide for "premiums" but for "assessments" to be levied as death claims arose. At the time chapter 8 was enacted the law provided (secs. 10739 to 10744, Ins. Code) that such an association could transform itself into a chapter 9 company without reincorporating, and thereafter be governed by the provisions of such last mentioned chapter. In the case of Imperial Mutual, such transformation was accomplished in the latter part of 1936. At that time its name was changed from Imperial Mutual Life Insurance

Association to Imperial Mutual Life Insurance Company; it altered its plan of doing business; prepared new policies and thereafter operated under the provisions of chapter 9 as to all business subsequently written. It should here be noted that chapter 8 does not provide for reserves on policies, but chapter 9 requires "modified" or reduced reserves for the first five policy years and thereafter full reserves (Ins. Code, sec. 10870). So far as the company here involved is concerned, full reserves were required to be maintained on business procured and policies issued after December 31, 1941 (Ins. Code, sec. 10870).

On June 16, 1941, A. Caminetti, Jr., in his capacity as Insurance Commissioner of the State of California and pursuant to the provisions of section 1011° of the Insurance Code, filed in the Superior Court of Los Angeles County his application for an order appointing him as conservator of Imperial Mutual and directing him as such conservator to take possession of respondent insurance company. Upon the issuance of such order, appellant Insurance Commissioner took possession of the books, records and property of respondent and proceeded to conduct, as such conservator, respondent's insurance business. Thereafter, and pursuant to the provisions of section 1012 of the Insurance Code, respondent made application to said superior court for an order permitting it to resume title and possession of its property and to be permitted to conduct its own business. The last mentioned code section provides that the order granted pursuant to section 1011 of the Insurance Code shall continue in force and effect until an application, such as was made by respondent insurance company here, is filed and "it shall, after a full hearing, appear to said court that the ground for said order directing the commissioner to take title and possession does not exist or has been removed and that said person can properly resume title and possession of its property and the conduct of its business."

Upon conclusion of such hearing the superior court rendered its judgment, denominated "interlocutory," wherein it was recited that the ground for the commissioner's action in taking over the respondent's business did not exist or had been removed, and that the insurance company could properly resume possession of its property and conduct of its business; that the order issued by the court on June 16, 1941, in accordance with Insurance Code section 1011, appointing the com-

missioner as conservator, be terminated and cancelled and the conservatorship created by such order be dissolved; and that the said insurance company take immediate possession of its properties; that the commissioner forthwith restore such properties to respondent. Following the foregoing, the judgment provided:

"The court retains jurisdiction of the matter for the purpose of entering a final judgment, upon motion of either party or on the court's own motion, such final judgment to make final disposition of this proceeding and the property and affairs of the respondent company, and which final judgment may be in accord with the interlocutory judgment or different therefrom, depending upon such further showing as may be made to the court.

"That until such final judgment shall have been entered, this court retains complete jurisdiction in the premises and in these proceedings for all purposes, including the making, upon proper showing, of any other or further appropriate order, and the amending or vacation of this interlocutory judgment.

"The matter is now continued on the court's calendar until February 10, 1943, at 10 o'clock a.m., or as soon thereafter as counsel can be heard, in department 12 of this court, for the presentation of such supplementary evidence, the hearing of such argument, and the making of such motions as may be meet and proper in the premises, with the right reserved to either party, however, to have set on the court's calendar at any time convenient to the court in the meantime, any matter appropriate to the premises."

So far as the factual background surrounding this litigation is concerned, the record discloses that for some time prior to 1937, Mr. Mark Pierce, president of Pierce Brothers, a corporation, which operates a large undertaking business in the city of Los Angeles, had been interested in what was then a comparatively new subject, referred to as burial insurance. Such insurance was and is legally authorized in this state (Ins. Code, sec. 10240). By the terms of the code section just cited, such insurance is referred to as a "burial contract"; is denominated a life policy which contains an agreement for a valuable consideration, to dispose of the remains of any person living at the time such policy is executed. Policies of this character are payable to a funeral director who receives the proceeds thereof in partial or complete payment of the

482

costs for the funeral of the insured. Believing that the establishment of such an insurance company would be of benefit to his mortuary; to funeral directors generally, and as well fill what he conceived to be a public need, Mr. Pierce traveled east where he consulted with the officers of two large life insurance companies in an endeavor to prevail upon them to write and issue such policies in the State of California; but for various reasons the companies interviewed declined to enter such a field of insurance. Mr. Pierce then determined upon identifying himself with some local company in Southern California which would undertake to issue such policies. While seeking an appropriate company for such purposes, Mr. Pierce came in contact with Mr. F. W. Bailey who was then president and a director of Imperial Mutual and held proxies from most of its members. Mr. Bailey's wife was also a company director, while an employee of the company served as the third director thereof. After some negotiations between Mr. Pierce and Mr. Bailey, the latter agreed to resign as an officer and director; to procure the resignations of the other officers and directors; to procure the election to the board of directors of persons named by Mr. Pierce and to substitute the latter for himself in all of the proxies held by him. In consideration of the foregoing, Mr. Pierce paid to Mr. Bailey the sum of $27,000. Accordingly, Mr. Pierce was duly designated as the proxy holder; and Pierce Brothers, Incorporated, determined who should go on the board of directors of the insurance company. It further appears that prior to consummating the purchase of Imperial Mutual, Mr. Pierce engaged the services of an attorney who was a former Insurance Commissioner of the State of Missouri and a recognized authority on insurance law, to lay the entire plan before the Insurance Department of the State of California; submitting to that department the names of those who would constitute the management personnel of the insurance company; that Pierce Brothers would become active in such management and that the company would write burial policies of insurance. The proposed plan met with no opposition from the California State Insurance Department and the testimony indicates a favorable attitude toward the plan on the part of the insurance department.

It is also indicated by the record herein that at the time the present management took over Imperial Mutual, that company had slightly more than 1,000 policyholders, to which figure its policyholders had diminished from over 5,000. Under

the law such an association was required to have at least 1,000 policyholders and should its membership decrease to less than that number and not be increased to 1,000 within ninety days, its certificate of authority to do business would be revoked and the Insurance Commissioner would liquidate it or merge it with some other company (Ins. Code, secs. 10711, 10712).

Such minimum membership requirement was, in effect, continued over into chapter 9 (Ins. Code, sec. 10830). It is noteworthy, in connection with the decision arrived at by the trial court that, under the present management Imperial Mutual enjoyed a substantial growth; expanded its policyholders from a scant 1,000 in 1937 to more than 10,000 by the end of the year 1940 and increased its total assets from some $16,000 to approximately $164,000 during the same period. Without here mentioning by name the persons comprising the present management, it is established by the record that they are men of proven business ability, financial responsibility, and of excellent standing in the community.

In the present proceeding appellant Insurance Commissioner challenges what is characterized as a "liberal" policy of writing insurance and settling claims thereunder. In that connection it appears that about September, 1938, the then Insurance Commissioner of California prepared a list of some twenty-eight instances in which claims against Imperial Mutual, aggregating some $4,800, had been paid under circumstances not contemplated by the policies and which were hazardous to the successful conduct of the insurance business. Following conferences or hearings held by the commissioner, Imperial Mutual agreed to install a completely new and rigid underwriting system, whereby the acceptance of all new insurance risks would be strictly and rigidly supervised and enforced. Also the same with respect to the payment of all claims; the legality of all claims would be closely considered so that no improper claims would be paid, but on the contrary all proper claims would be paid promptly. The company agreed not to ante-date any more policies except to make the policies uniformly dated on the 1st and 15th. If a policy was issued, we will say, June 10th, it would be dated June 15th, the nearest half month's date, or if a policy were issued June 5th, it would be dated June 1st. A completely new underwriting system was immediately installed whereby all applicants were either inspected or medically examined in accordance with their age or amount of the policy applied for and

undesirable risks rejected. A new system was installed with reference to payment of claims. Claims were closely examined and all facts as to their validity were also considered. Every claim was submitted to the company's attorney for his opinion as to the legality of the claim and whether it should be paid or rejected. As to the subsequent conduct of respondent insurance company, appellant commissioner in his brief concedes that "since that conference, the files do not disclose any serious repetition of the situation there presented"; while in connection therewith the trial judge in his summation of the evidence said "The mistakes that were made in those early years have been frankly admitted, and there is no evidence that they were continued. The evidence indicates that the company learned by those mistakes, profited by them, and did not continue any of them."

Further, in connection with the conferences or hearings held by the commissioner in 1938, appellant complains "It was pointed out that the financial situation of the company was becoming impaired; and that Mr. Pierce thereupon donated $9,000 to the company; and his brother-in-law, Mr. Dean, the next year donated an additional $2,000." We fail to perceive in these contributions or loans to the company any evidence that the donors' connection with the insurance company constituted a hazardous or dangerous situation. It seems rather to confirm the position taken by the Insurance Commissioner in 1938 that the connection of Pierce Brothers, Incorporated, and its officers with Imperial Mutual was more of an asset than a hazard and more a source of strength than of danger.

We shall first give consideration to appellant's claim that the evidence showed without conflict that the company did not have assets, in excess of its other liabilities, to provide for reserves as required by section 10870 of the Insurance Code, and that, in consequence, the court erred in holding that the company was not in a financially hazardous condition; that it had complied with the law and had met the requirements thereof for the issuance to it of a certificate of authority to do business (Ins. Code, secs. 10915, 1011-e, 1011-i). Appellant Insurance Commissioner concedes the long established and usual rule that before an appellate tribunal is justified in reversing a judgment upon the ground of insufficiency of the evidence, it must appear from the record that accepting the full force of the evidence adduced, together with every infer-

ence favorable to the prevailing party which may be drawn therefrom, it still appears that as a matter of law the prevailing party is precluded from recovering a judgment, but urges that the rule does not apply if the trial judge committed any error or errors of law which manifestly influenced or controlled his conclusions of fact. In other words, that an appellate court is not bound by the findings of the trial court on evidence where an erroneous view of the law has been applied to the facts. To the claimed application of erroneous rules of law to the facts by the trial court, we shall later give consideration because from a review of the record we are convinced that any such errors could not have influenced the conclusion arrived at by the trial court when the evidence herein is considered as a whole.

█ As we understand the definition of the word "hazardous" as used in the statute, it means that the management of the insurance company so conducts its business that there is a loss or risk of loss to the policyholders. That when such a condition prevails it becomes the duty, and is the right of the Insurance Commissioner, to take possession of the company's assets and to conduct its business as conservator. █ Appellant Insurance Commissioner asserts that the present management came into power through an illegal agreement by which it caused to be paid the sum of $27,000 to fiduciaries to induce them to abandon their trust. What we have heretofore said concerning the progress made by the present management strongly militates against the verity of the claim that the action of Pierce Brothers in obtaining control of the insurance company proved in any way hazardous to the latter or its policyholders. █ It is next contended that the influence and control of Pierce Brothers over the management of Imperial Mutual was inimical to the best interests of the company and tended to produce a hazardous situation in reference thereto. The evidence in the case does not warrant such a conclusion. As heretofore pointed out, the evidence was such as to justify the view taken by the trial court that the present management has been a source of strength to the insurance company. No salaries or other remuneration have been taken by the management. A contribution of $11,000 in cash to the insurance company was made by the management and the company's general agency was financed by the Pierce Brothers group to the extent of some $41,000. Appellant concedes that the men who make up the Pierce Brothers corporation are

astute and successful business men but challenges their motive and the opportunity for venality that is presented to them. The record of accomplishments by the insurance company under the present management does not warrant the stricture that they either took advantage of any opportunity to do wrong by the insurance company or that their motive was an evil one. It is the legality of their acts with which the law is concerned rather than the motive which prompts such actions. With reference to the proxies obtained by Mr. Pierce, the record reflects that when the Insurance Commissioner objected to their use, the management disregarded and terminated such proxies in 1940 and they were not thereafter used. At the annual meeting of the insurance company, whereat directors were elected, the policyholders were fully informed of their rights to appear personally at the meeting or to give their proxy to anyone they chose. The board of directors did name a policyholders' committee of five prominent and reputable men but the policyholder was left free to designate any person of his choice as a proxy in the event he did not desire to appear at the meeting and vote in person. True, Pierce Brothers had an interest in the insurance company, reflected in their profits from funerals conducted by them and paid for from the proceeds of the burial policies issued by the company, but we fail to perceive wherein such an interest was antagonistic to the welfare of the company so long as the affairs of the latter were honestly and efficiently conducted. The record is barren of any evidence of dishonesty at any time and fails to establish any inefficiency since the conferences held with the former commissioner in 1938.

We come now to a consideration of appellant commissioner's claim that the methods adopted by the insurance company in computing its reserves did not conform with the provisions of section 10870 and other Insurance Code mandates. It would unduly prolong this opinion to enter into a discussion of the technical nature of life insurance reserves and the manner of their computation as the same appears in the record. Suffice it to say that conceding a conflict in the evidence upon the merits of reserve computation as practiced by the insurance company management and the method advocated by the Insurance Commissioner, there is nevertheless in the record evidence of sufficient substantiality to warrant the trial court's conclusion that no hazardous or unsound financial condition was proven, and that the further transaction of busi-

ness by the present management would not be hazardous to the company's policyholders or creditors, or to the public. During the years the company has been in business under the present management it has promptly met all its financial obligations. The factual situations which we have been discussing all involved matters which of necessity must be confided to the sound discretion of the trial court which hears the testimony, observes the witnesses and analyzes the financial statement of the company. ■ When the trial court has, upon competent testimony and without abuse of discretion, determined that the management of the insurance company is such that the control of its business should be returned to it, that determination is binding upon our courts of review (*Caminetti* v. *Guaranty Union Life Insurance Co.*, 52 Cal.App.2d 330, 336 [126 P.2d 159]).

In view of the conclusion at which we have arrived concerning the correctness of the court's decision that respondent company "Can properly resume title and possession of its property and the conduct of its business" (sec. 1012, Ins. Code) it becomes unnecessary to discuss or decide appellant's contention that the court erred in striking from the order obtained by the commissioner on June 16, 1941, under section 1011 of the Insurance Code, that portion of such order which directed that title to respondent corporation's assets be vested in the commissioner. The latter concedes that the claimed error in this respect is not of itself, of such a nature as to require a reversal of the main order appealed from, and that only in case of a reversal would the question of technical title to the company's assets assume importance.

■ Appellant Insurance Commissioner next complains of the ruling of the trial court upon the hearing under section 1012 of the Insurance Code that the burden of proof was upon the commissioner. This ruling was erroneous. In making his application under section 1011 of the Insurance Code, the commissioner does not seek a judicial appointment and a judicial ruling that the company is in fact delinquent. By his application the commissioner merely represents that he has found certain conditions to exist and has made his official administrative determination to proceed as authorized by the statute. In obtaining his original ex parte order, the commissioner is not required to show to the court that the company was in fact in a hazardous condition, but only that he, as a state officer, invested by legislative authority with the power, has

so "determined" and "found". The Insurance Code provides that the order or determination of the commissioner to take over the affairs and assets of the company shall continue in force and effect until, upon application by either the commissioner or of the company, it shall appear to the court, after a full hearing, that the ground for said order does not exist or has been removed and that the company can properly resume title to and possession of its property and the conduct of its business. ██ While the order of proof in any trial is generally speaking within the discretion of the court, it has been decisively settled that in a proceeding such as this, under section 1012 of the Insurance Code, it is the duty of the company challenging the determination of the Insurance Commissioner to take over its affairs, to assume the burden of proof upon its application to the court for an order terminating the conservatorship (*Caminetti* v. *Guaranty Union Life Insurance Co.*, 52 Cal.App.2d 330, 335, 336 [126 P.2d 159]). However, we are not persuaded that the error in the ruling complained of warrants or necessitates a reversal. ██ A judgment may be reversed for erroneous rulings on questions of law only when the rights of the party complaining have been prejudiced; and where the decision or judgment is manifestly right upon the evidence and the error has not resulted in a miscarriage of justice, an appellate tribunal is not authorized to set aside the judgment. In other words, it is incumbent upon appellant to show that error has occurred which resulted in a miscarriage of justice before he is entitled to a reversal (sec. 4½, art. VI, Const. of Cal.; *Tupman* v. *Haberkern*, 208 Cal. 256, 262, 263 [280 P. 970]; *Lutz* v. *Merchants National Bank*, 179 Cal. 401, 404 [177 P. 158]; *Murphy* v. *Retirement Board*, 49 Cal.App.2d 58, 60 [121 P.2d 101]). ██ In the instant proceeding there was a full and fair hearing; each side was permitted to and did present all of its evidence. Therefore, notwithstanding this error of law, after an examination of the entire cause, including the evidence, we are unable to say that the error complained of resulted in a miscarriage of justice. We cannot, therefore, disturb the judgment. We are not unmindful of appellant commissioner's claim that it cannot be assumed that the court would have found in favor of respondent upon the main question involved had it required that the evidence should preponderate in favor of respondent. But as we review the evidence and the summation thereof by the trial court, we are impressed with the

belief that respondent met the burden imposed upon it, and consequently, no miscarriage of justice resulted from the erroneous ruling as to who should assume the burden of proof. When considered as a whole, the evidence clearly justifies the decision arrived at in the trial forum.

It is next contended by appellant commissioner that the court erred in refusing to permit him to prove that certain officers of respondent company had been convicted of a felony involving fraud. In his "Response to Application for Full Hearing" the commissioner pleaded "On or about the 30th day of March, 1938, the said Mark A. Pierce and the said Joseph B. Doan, and certain other officers and employees of Pierce Bros., a corporation, were charged in an indictment filed in the United States District Court for the Southern District of California with the commission of a felony, to-wit, a violation of section 88 of title 18 of the United States Code in that they did conspire to defraud the government of the United States. Thereafter and on or about the 26th day of September, 1938, the said Mark A. Pierce and the said Joseph B. Doan each entered a plea of nolo contendere to said indictment and judgment was thereupon entered assessing a fine of $2,500 against each of them." In support of the foregoing allegations the commissioner offered in evidence a certified copy of such an indictment in the United States District Court and of the "judgment and commitment" showing the pleas interposed and the fine assessed. At the close of the hearing the court granted a motion to strike the above quoted paragraph from the commissioner's "response" and sustained an objection to the proffered exhibit. In support of his claim that the rulings of the court were erroneous, appellant urges that the foregoing evidence conclusively established that the company did not comply with the legal requirements for the issuance to it of a certificate of authority (Ins. Code, sec. 704.5) and therefore "he was entitled to continue in possession and control of the company's business, affairs and assets (Ins. Code, sec. 1011-i)." The first section just cited vests in the commissioner power to suspend, revoke, or decline to grant or renew a certificate of authority if any present officer or director of the applicant company has been convicted of a felony, having as one of its necessary elements a fraudulent act or an act of dishonesty in the solicitation of, acceptance, custody or payment of money or property, while the subdivision of the section last referred to authorizes the insur-

ance commissioner to take possession of a company when it has failed to comply with the requirements for the issuance to it of a certificate of authority, or when its certificate has been revoked. Without question Mr. Pierce was an officer and director of Imperial Mutual and it cannot be questioned but what the offense charged in the indictment was one "having as one of its necessary elements a fraudulent act." That the offense charged was a felony must also be conceded (18 U.S.C., 541; *State* v. *Fousek*, 91 Mont. 448 [8 P.2d 791, 84 A.L.R. 303]). ▮ True, a different rule is prescribed by our statute which classifies crimes after judgment as felonies or misdemeanors according to the penalty actually imposed (Pen. Code, section 17). But that statute has application only to crimes under our state statutes and has nothing to do with crimes denounced by the federal statutes. ▮ It is the law of the jurisdiction where the crime was committed that determines the character of the offense as a felony or a misdemeanor (*State* v. *Fousek*, *supra*). Assuming that a judgment and sentence pronounced following the entry of a plea of *nolo contendere* constitutes a "conviction," can such a "conviction" predicated as it is on a *nolo contendere* plea, be received in evidence as an admission of guilt in a collateral and subsequent civil proceeding? ▮ In reviewing the history of *nolo contendere* pleas, the authorities are harmonious in holding that such a plea, like a demurrer, admits for the purpose of the particular case, all the facts therein stated, but is not to be used as an admission elsewhere. Such a plea is an implied confession only of the offense charged. It is discretionary with the court to receive it or not. It is advantageous to a party because by it he is not estopped to plead not guilty to an action for the same facts, as he would not be permitted to do upon a plea of guilty. The existence in the law of the two pleas, i.e., guilty and *nolo contendere,* is indicative of the fact that there is some distinction or difference between them. Undoubtedly the plea of *nolo contendere* is often used as a substitute for a plea of guilty but it amounts only to a declaration by the defendant that he will not contend. It has been held not to be a confession of guilt (*Barker* v. *Almy,* 20 R.I. 367 [39 A. 185]). It is uniformly held that such a plea cannot be used against the defendant as an admission in any civil suit for the same act. Manifestly, if a plea of *nolo contendere* has the same effect as a plea of guilty, viz., admitting the charge, then it differs

in no respect from a plea of guilty (*Buck* v. *Commonwealth*, 107 Penn. 486, 489). *Tucker* v. *United States*, 196 F. 260 [116 C.C.A. 62, 41 L.R.A.N.S. 70], is authority for the statement that the plea of *nolo contendere* is in fact a confession on which a defendant may be sentenced in a particular prosecution, and as the plea is limited to that particular case, such conviction can not be used in another proceeding to discredit the witness; then in *State* v. *Suick*, 195 Wis. 175 [217 N.W. 743], we find the following: "The plea of *'nolo contendere'* is an implied confession. Judgment of conviction follows such a plea as a matter of course, yet the plea itself contains no admissions which can be used against the defendant in another action." Strictly speaking, therefore, the plea of *nolo contendere* amounts only to an agreement on the part of the defendant that the fact charged may be considered as true for the purposes of the particular case wherein it is entered (31 A.L.R. 278). A plea of *nolo contendere*, while implied, is not a conclusive confession of guilt. By entering the plea the defendant does not confess or acknowledge the charge against him, as upon a plea of guilty (*Doughty* v. *DeAmoreel*, 22 R.I. 158 [46 A. 838]; *State* v. *LaRose*, 71 N.H. 435 [52 A. 943]; *White* v. *Creamer*, 175 Mass. 567 [56 N.E. 832]). ▇▇▇ We are therefore persuaded that the plea of *nolo contendere* did not constitute evidence that the officers of the insurance company herein who entered such a plea in the federal court, had engaged in a fraudulent transaction and therefore the "conviction" based upon such a plea was inadmissible as an admission against such company officers in the instant proceeding. Appellant commissioner at the trial did not offer any evidence that the company officers in question had engaged in any fraudulent transactions but relied upon the erroneous theory that such officers' pleas of *nolo contendere* in the federal court amounted to a confession of guilt and consequent conviction that was binding upon them in subsequent proceedings including the instant case.

In a well considered and clearly reasoned opinion prepared by Honorable Emmet H. Wilson, Judge of the Superior Court of Los Angeles County, in case numbered 389,698, entitled S. B. Buchsbaum, Petitioner, v. Daugherty, Commissioner of Corporations of the State of California, Respondent, it was held that the Corporation Commissioner could not refuse to issue a permit because the applicant

therefor had entered a *nolo contendere* plea in a federal court criminal proceeding which charged a felony. The entry of a *nolo contendere* plea simply amounts to an arrangement or agreement between the defendant and the court that to save the government the expense of prosecuting the case and to save the defendant the cost and annoyance of defending it, he, the defendant, agrees, solely and alone and for the purpose of that case and for no other purpose, that the federal court may assume that the defendant is guilty and assess a fine against him. The conviction thus obtained upon such a plea, by reason of the agreement underlying it, must in all good conscience, fairness and equity be held to be a conviction for the limited and agreed purposes of that proceeding, and to carry out the arrangement made with the court, and for no other purpose. The proffered evidence was therefore not admissible against the officers of the company in the case at bar and the rulings of the trial court thereon were correct and proper.

Finally, appellant Insurance Commissioner contends that the court erred in that part of what was denominated "an interlocutory judgment" wherein the court recited that it retained jurisdiction of the proceedings and continued the matter for a year and a day for the purpose of receiving further evidence or hearing additional motions. We find ourselves in accord with appellant's claim that such attempt by the court to retain jurisdiction over the matter is at entire variance with the statutory provisions, in direct conflict with the whole theory of such administrative proceedings and, therefore, void and ineffective. The challenged portion of the judgment is hereinbefore set forth and quoted in this opinion. This being a special proceeding the jurisdiction of the court is limited by the terms and conditions of the statute under which the proceeding is instituted (*Smith* v. *Westerfield*, 88 Cal. 374 [26 P. 206]). There was but one question before the court and that was as to the right of appellant commissioner to operate respondent's insurance business, or whether the control and operation of such business should be withdrawn from the commissioner and restored to respondent. When by its judgment the court decided this issue in favor of respondent, it completely and effectively exhausted the court's jurisdiction. Upon the authority and for the reasons stated by us in *Caminetti* v. *Imperial Mutual Life Insurance Co.*, 54 Cal.App.2d 514 [129 P.2d 432], which had to do with a motion to dismiss this appeal, the judgment

herein must be modified by striking therefrom that portion by which the court sought to thereafter retain jurisdiction of the issues here involved.

For the foregoing reasons the judgment appealed from is modified by striking therefrom that portion last referred to and which is herein quoted, and as so modified the judgment is affirmed. Neither party to recover costs on appeal.

York, P.J., concurred.

DORAN, J.—I dissent. I am not satisfied that section 4½ of article VI is sufficiently comprehensive to redeem the judgment, reached, as it was, under the possible and likely influence of a misunderstanding of the law in several vital particulars.

I am in entire accord with the arguments presented by appellant with regard to most of them and in particular with regard to the error of the trial court pertaining to the burden of proof. Equally vital, in my opinion, was the evident misunderstanding of the trial court as to the nature of the action. Obviously, in that connection, the action was confused with an action in equity where the court has and retains control of the receiver at all stages of the proceeding and where the court's judgment is paramount. What the outcome would have been in the absence of these two errors alone, to my mind, is impossible of determination.

It is my understanding of the law, that when, from a review of the entire record, it is impossible to determine definitely what the result would have been in the absence of the errors under consideration, then section 4½ may not be applied to uphold the judgment. It has been so held in criminal cases. (*People* v. *Salaz*, 66 Cal.App. 173 [225 P. 777]; *People* v. *Irby*, 67 Cal.App. 520 [227 P. 920]; *People* v. *Sica*, 76 Cal. App. 648 [245 P. 461].) And there is no apparent reason for distinguishing between criminal and civil actions in such circumstances. Moreover, in civil actions involving juries it has been held repeatedly that instructions calculated to mislead the jury and, thereby affect their judgment and conclusion upon the issues, is prejudicial and reversible error. An erroneous viewpoint or a misunderstanding as to the law by the trial judge, calculated to mislead and thereby affect the judgment, likewise may result in a miscarriage of justice. Section 4½ is not a cure-all and in my opinion should not

be applied to sustain a judgment in the circumstances presented by the record herein.

A petition for a rehearing was denied July 28, 1943. Doran, J., voted for a rehearing. Appellant's petition for a hearing by the Supreme Court was denied August 26, 1943.